466 S.E.2d 171

**David D. GENTRY and Nancy Gentry, Petitioners Below, Appellants,**

**v.**

**R. Michael MANGUM, Sheriff of Raleigh County; and Paul H. Flanagan, Vernon P. Barley and Jack P. MacDonald, in their Official Capacity as the County Commission of Raleigh County, Defendants Below, Appellees.**

No. 22845.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Dec. 8, 1995.

514

Scott S. Segal, Mark R. Staun, Andrew J. Katz, Segal & Davis, Charleston, for Appellants.

David P. Cleek, Cleek, Pullin, Knopf & Fowler, Charleston, for Appellees.

CLECKLEY, Justice:

The plaintiffs below and appellants herein, David D. Gentry and Nancy Gentry, his wife,

appeal from an order of the Circuit Court of Raleigh County granting the defendants below and appellees herein, the Sheriff and County Commissioners of Raleigh County, summary judgment in an action brought by the Gentrys to recover damages for personal injuries sustained when David Gentry, who was a deputy sheriff, was shot in the line of duty. The Gentrys argue the defendants "deliberately intended" to injure David Gentry when they issued a policy requiring the deputy sheriffs of Raleigh County to change the location of the shotgun carried in police cruisers from the cabins of the vehicles to the trunks without providing training on the use and retrieval of the shotgun. On appeal, the plaintiffs claim the circuit court erred in granting summary judgment. They also claim the circuit court erred in refusing to allow a police officer whom they called as an expert witness to give opinion testimony in an area in which he had specialized knowledge by virtue of his experience, training, and education. For the reasons discussed below, we find the circuit court erred in refusing to permit the testimony of the plaintiffs' expert witness.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On June 1, 1991, Officer Gentry responded to a call about someone roaming around the Crab Orchard area of Raleigh County carrying numerous guns on his person and generally causing problems. Finding no one meeting that description, Officer Gentry prepared to leave the area when he spotted an old van with an expired inspection sticker. Officer Gentry then attempted to pull the van over because of the driving violation; however, the van sped away. After driving some distance, the driver of the van failed to make a turn and drove over an embankment. Deputy Gentry stopped his cruiser to investigate. Immediately after exiting the vehicle, he was shot once in his left hand and arm. Pursuant to a regulation which was issued by the

Raleigh County Sheriff's Department, Deputy Gentry had a shotgun locked in the trunk of his police cruiser. After being shot, he began to move in an effort to reach the shotgun in the trunk. He also fired his .357 revolver at the assailant. The assailant then shot Deputy Gentry in the left leg.

Following this incident, the plaintiffs brought this action to recover for the injuries resulting from the June 1, 1991, shooting. In bringing the action, they charged the defendants knowingly promulgated and enforced a regulation that required the shotgun issued to Deputy Gentry be stored in the locked trunk of his police cruiser. The plaintiffs also claimed the defendants implemented this regulation without conducting an adequate investigation into the hazards associated with the decision or without providing Raleigh County deputies, including Deputy Gentry, with adequate training in utilization and retrieval of shotguns locked in the trunks of police cruisers. Lastly, the plaintiffs asserted the actions of the defendants satisfy the definition of "deliberate intent" found in the West Virginia Workers Compensation Act, W.Va.Code, 23–4–2 (1991),[1] and entitles them to bring a so-called "Mandolidis" action.[2]

Extensive discovery was conducted as the case progressed. In the course of the discovery, facts were developed which showed that Deputy Gentry, who had acted as a part-time administrative aide to the defendant, Sheriff R. Michael Mangum, had discussed with the Sheriff widespread dissatisfaction among the deputies with the policy requiring the locking of shotguns in the trunks of police cruisers. There was also evidence that Sheriff Mangum had had verbal disputes over the policy with three deputies who kept their shotguns in the cabs of their vehicles. The facts showed that, in spite of the problems with the policy, Sheriff Mangum never provided training for the adequate retrieval and use of the shotguns when they were located in the trunks of the police cruisers.

After considerable discovery was conducted, the defendants moved for summary judg-

---

1. This statute was amended in 1994, but the changes do not affect the disposition of this case.

2. *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), *superseded by statute/rule as stated in Handley v. Union Carbide Corp.*, 804 F.2d 265 (4th Cir.1986).

ment. The circuit court deferred ruling on the motion to afford the plaintiffs an opportunity to conduct additional discovery. The deposition of Officer Charles Mader was taken to elicit his opinion regarding the defendants' "deliberate intent" to injure Deputy Gentry. Officer Mader testified in the deposition that Sheriff Mangum's failure to train the deputies on the retrieval and use of the shotguns after changing the location of the shotguns from the cabins of police cruisers to the trunks, especially when the Sheriff knew the deputies were uncomfortable with the policy, created a specific unsafe working condition with a high probability of serious injury or death. He also testified that Sheriff Mangum had a subjective realization that the dangerous condition created by his decision would lead to serious injury or death, that the unsafe working condition was a violation of commonly accepted and well known safety standards within law enforcement agencies, and that Deputy Gentry's injury to his leg was a direct and proximate result of the specific unsafe working condition.

After Officer Mader's deposition was taken, the circuit court granted the defendants' motion for summary judgment. In granting the motion, the circuit court specifically held that Officer Mader had no special expertise in the subject matter to which the plaintiffs wished him to testify and that the Sheriff and County Commissioners had not violated a well known and commonly accepted standard of law enforcement when Sheriff Mangum failed to train Deputy Gentry on how to retrieve and use his shotgun. The circuit court also ruled that any failure on the part of the Sheriff and County Commissioners to train Deputy Gentry was not a proximate cause of the injuries and that the County Commissioners had no connection or input into the policy changing the location of the shotguns.

In the present proceeding, the plaintiffs claim the circuit court erred in holding that Officer Mader could not give expert opinion testimony. In arguing this claim, the plaintiffs take the position that there are in the law two types of expert opinion testimony. The first type involves evidence derived through application of a scientific method. According to the plaintiffs, the second type is not based on a scientific method, but on the expert's experience and training. The plaintiffs essentially argue the circuit court in the present case improperly used tests applicable to expert opinion testimony derived through application of a scientific method. They take the position that Officer Mader's testimony was not the type of expert opinion testimony derived through application of a scientific method, but was of the second type of expert testimony based on the expert's experience and training. They argue that in applying the scientific method test to Officer Mader's testimony, the circuit court erred.

## II.

## DISCUSSION

The admissibility of expert testimony is governed by the West Virginia Rules of Evidence. The recent cases of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert denied*, —— U.S. ——, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), provide the contour of analysis regarding the admissibility of scientific testimony under the West Virginia Rules of Evidence. These decisions and Rule 702 impose upon a circuit court the duty to screen scientific evidence for relevance and reliability.[3] Thus, the issue we must address is whether the circuit court properly performed its "gatekeeper" function under *Daubert/Wilt.*

The parties disagree as to whether Officer Charles Mader was properly qualified to render expert testimony regarding the adequacy

---

3. The opinion for the majority in *Daubert* commenced its discussion of the trial judge's obligation to screen "purportedly scientific evidence" by construing the words "scientific" and "knowledge," which appear in Rule 702. When the Court put these two words together, it concluded that Rule 702 limits expert testimony on scientific issues to opinions that are the product of a scientific thinking process. What must be emphasized is that expert testimony under Rule 702 is not limited to scientific evidence. Indeed, Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact[.]" We limit our discussion to scientific testimony because that is the focus of the *Daubert* opinion.

of training, instructions, and supervision by the Sheriff and the propriety of officers without such training keeping weapons in the trunks of police cruisers. The plaintiffs contend *inter alia* that the proposed testimony was not barred by *Daubert/Wilt* because the opinions of Officer Mader did not deal with opinions based on "scientific" knowledge. Rather, the plaintiffs suggest that the proposed testimony should be judged under the more lenient standard found in Rule 702: Whether the testimony was of assistance to the trier of fact. On the other hand, the defendants contend Officer Mader neither was qualified to testify as an expert witness nor was his testimony reliable regardless of whether it is considered "scientific" or otherwise. This case presents us with the opportunity to address some important issues surrounding the application of *Daubert/Wilt* in the context of a West Virginia trial.

### A.

### *Standard of Review*

■■■ There are three basic sets of standards that apply to this case. First, an interpretation of the West Virginia Rules of Evidence presents a question of law subject to *de novo* review. Second, ordinarily a circuit court's evidentiary rulings are reviewed under an abuse of discretion standard. A party challenging a circuit court's evidentiary rulings has an onerous burden because a reviewing court gives special deference to the evidentiary rulings of a circuit court.[4] In the area of scientific evidence, however, we have adopted a specifically tailored standard of review. In note 5 of *State v. Beard*, 194 W.Va. 740, 746, 461 S.E.2d 486, 492 (1995), a seminal opinion by Justice Workman, we stated:

"The first and universal requirement for the admissibility of scientific evidence is that the evidence must be both 'reliable' and 'relevant.' Under *Daubert/Wilt*, the reliability requirement is met only by a

finding by the trial court under Rule 104(a) that the *scientific* or technical theory which is the basis for the test results is indeed 'scientific, technical, or . . . specialized knowledge.' The trial court's determination regarding whether the scientific evidence is properly the subject of 'scientific, technical, or other specialized knowledge' is a question of law that we review *de novo*. An example of that sort of legal determination by the trial court is detailed in *Daubert*, in which the Court explained that part of a trial court's 'gatekeeping' function under Rule 702 when, for example, scientific testimony is offered, is the determination whether 'the reasoning or methodology underlying the testimony is scientifically valid[.]' [509] U.S. at [——,] 113 S.Ct. at 2796[, 125 L.Ed.2d at 482]. On the other hand, the relevancy requirement compels the trial judge to determine, under Rule 104(a), that the scientific evidence 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' W.Va.R.Evid. 702. Appellate review of the trial court's rulings under the relevancy requirement are reviewed under an abuse of discretion standard." (Emphasis added).

■■■ Third, since summary judgment was granted to the defendants, we must be satisfied that there exists no genuine issue as to material fact. W.Va.R.Civ.P. 56. Even in the context of *Daubert/Wilt*, there is no doubt that summary judgment is sometimes appropriate. In *Daubert*, the Supreme Court stated:

"Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, . . . [W.Va.]Rule Civ.Proc. 50(a), *and likewise to grant summary judgment, . . .* [W.Va.]Rule Civ.Proc. 56." 509 U.S. at

---

**4.** In other words, we review the circuit court's ruling on the admissibility of testimony for an abuse of discretion, " 'but to the extent the . . . [circuit] court's ruling turns on an interpretation of a . . . [West Virginia] Rule of Evidence our review is plenary.' " *In re Paoli R.R. Yard PCB*

*Litigation*, 35 F.3d 717, 749 (3d Cir.1994), *cert. denied sub nom., General Elec. Co. v. Ingram*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), *quoting DeLuca v. Merrell Dow Pharmaceuticals, Inc.*, 911 F.2d 941, 944 (3rd Cir.1990).

——, 113 S.Ct. at 2798, 125 L.Ed.2d at 484. (Emphasis added).

On a motion for summary judgment, however, a circuit court cannot try issues of fact; it can only determine whether there are issues to be tried. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995); *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In general, summary judgment is proper only if, in the context of the motion and any opposition to it, no genuine issue of material fact exists and the movant demonstrates entitlement to judgment as a matter of law. *See* W.Va.R.Civ.P. 56(c); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Hence, a party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. Once the movant makes this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue. An expert's deposition or affidavit that is conclusory only is not sufficient to meet the burden on the party opposing the motion, although an affidavit or deposition containing an adequately supported opinion may suffice to raise a genuine issue of fact. An issue is "genuine" when the evidence relevant to it, viewed in the light most favorable to the party opposing the motion, is sufficiently open ended to permit a rational factfinder to resolve the issue in favor of either side.

■ Because the summary judgment standard requires the circuit court to make a legal determination rather than to engage in differential factfinding, appellate review is plenary. More specifically, where the granting of summary judgment is dependent on the exclusion of expert testimony, as it is *sub judice*, our review must be more stringent.

In *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 749 (3rd Cir.1994), *cert. denied sub nom., General Elec. Co. v. Ingram*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), the court stated: "[E]valuating the reliability of scientific methodologies and data does not generally involve assessing the *truthfulness* of the expert witnesses and thus is often not significantly more difficult on a cold record." (Emphasis in original). The court concluded that "when the district court's exclusionary rulings with respect to scientific opinion testimony will result in a summary or directed judgment, we will give them a 'hard look' (more stringent review ...) to determine if a district court has abused its discretion in excluding evidence as unreliable." *Paoli*, 35 F.3d at 750. (Citation omitted). In applying the standard of review that we adopted in *Beard* and in cases other than those resulting in summary judgment, we have held a circuit court has broad discretion in determining the relevancy of scientific evidence and this Court will sustain the circuit court's ruling unless the ruling is a clear abuse of discretion. On the other hand, our review of the granting of summary judgment and of a circuit court's determination regarding whether the scientific evidence was properly the subject of "scientific, technical, or other specialized knowledge" is *de novo*.

■ It is necessary next to address what we, as an appellate court, should do if we find the disputed proffered testimony is not *per se* inadmissible. In *Williams v. Precision Coil, Inc., supra*, we acknowledged that a grant of summary judgment may be sustained on any basis supported by the record. Thus, it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court.[5] In the peculiar

---

5. There is, of course, a significant difference between admissibility and sufficiency of evidence to meet the substantive burdens of proof. *Daubert/Wilt* recognized that the admissibility standards of Rule 702, even when satisfied, may not always suffice to discharge a party's burden of proof. Specifically, the Supreme Court stated that if "the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free" to rule as a matter

of law under Rule 50 or Rule 56. *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2798, 125 L.Ed.2d at 484. Of course, whether an issue should be resolved in terms of admissibility or sufficiency of evidence will depend on the circumstances of each case.

Expert testimony that may be admissible under Rule 702 of the Rules of Evidence may nevertheless be insufficient to survive a motion for summary judgment under Rule 56 of the Rules of Civil Procedure. For example, counsel is no

circumstances of this case, however, we believe the interests of justice will best be served if we simply remand the case to the circuit court for its determination of any issues left remaining after our ruling on the admissibility of the expert testimony. Our review is, therefore, a narrow one: We will affirm the summary judgment only if, as a matter of law, the proffered evidence must be excluded at trial. On remand, however, the circuit court's power is broader; were we to conclude the expert testimony is not *per se* inadmissible, the circuit court would nevertheless have discretion to reject it under Rule 403 or Rule 703 of the Rules of Evidence. *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2797–98, 125 L.Ed.2d at 483–84. Such a ruling would be reviewed under the deferential abuse of discretion standard.[6] *See State v. Guthrie*, 194 W.Va. 657, 681–82, 461 S.E.2d 163, 187–88 (1995); *State v. Derr*, 192 W.Va. 165, 178, 451 S.E.2d 731, 744 (1994).

### B.

*General Principles*

Rule 702 of the West Virginia Rules of Evidence permits opinion testimony by experts when the witness is "qualified as an expert by knowledge, skill, experience, train-

ing, or education," and "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Thorny problems of admissibility arise when an expert seeks to base his or her opinion on novel or unorthodox techniques that have yet to stand the test of time to prove their validity. Until 1993, the overwhelming majority of courts, including West Virginia, followed the so-called *Frye* test and excluded such innovative testimony unless the techniques involved had earned "general acceptance" in the relevant scientific community. *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), *superseded by statute as stated in Daubert, supra; State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980) (explicitly adopted *Frye* ), *receded from by Wilt v. Buracker, supra.*

In *Daubert/Wilt*, the *Frye* test was abandoned by the courts, concluding that *Frye*'s rigid standard was inconsistent with the *liberal* thrust of the Federal and the West Virginia Rules of Evidence. *See Daubert*, 509 U.S. at ——, 113 S.Ct. at 2794, 125 L.Ed.2d at 480. Circuit judges "ruling on the admissibility of expert scientific testimony face a far more complex and daunting task in a post *Daubert[/Wilt]* world than

---

longer required under Rule 702 to ask a witness whether his or her opinion is given under the "to a reasonable degree of medical certainty" standard. However, in future damages cases, if the evidence does not otherwise demonstrate this fact, the party has failed to meet the substantive burden of proof. On the other hand, even though a defendant may in some instances be able to discharge his or her burden of proof on a summary judgment motion by merely "pointing" to deficiencies in the plaintiff's case, a higher standard may be more appropriate when the defendant is attacking the plaintiff's scientific evidence. In attacking an opponent's scientific evidence, more than an affidavit disputing the issue may be required. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319–20 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995) (the affidavit of another expert was insufficient to prove causation in terms of the "more likely than not" standard enforced by the substantive law of California under the expert's own statistical methodology).

**6.** We emphasize again that in the relevancy area a circuit court has considerable latitude in determining whether to admit or exclude evidence under Rules 401 through 403 of the Rules of

Evidence. We review these rulings only for an abuse of discretion. Only rarely and in extraordinary circumstances will we, from the vista of a cold appellate record, reverse a circuit court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect. Our review, however, must have some purpose and that is why we review under the abuse of discretion standard. In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them.

The United States Supreme Court suggested the "fit" requirement "goes primarily with relevance." *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481. But, as stated by the Ninth Circuit, on remand, "it obviously did not intend the second prong of Rule 702 to be merely a reiteration of the general relevancy requirement of Rule 402." *Daubert*, 43 F.3d at 1321 n. 17. In addition to Rule 702, the circuit court may exclude testimony under Rule 403 unless it is convinced that the testimony speaks clearly and directly to the issue in dispute in the case and will not mislead or distract the jury.

before."[7] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995). Significantly, *Daubert/Wilt* granted circuit judges the discretion and authority to determine whether scientific evidence is trustworthy, even if the technique involved has not yet won general scientific acclaim. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2799, 125 L.Ed.2d at 485 (it is "the trial judge['s] ... task ... [to] ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). *Daubert/Wilt* explained that Rule 702 and Rule 104(a) require "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology ... properly can be applied to the facts in issue." *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2796, 125 L.Ed.2d at 482. The circuit court's assessment will include such factors as the ability to be tested, peer review and publication, and potential rate of error. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2796–97, 125 L.Ed.2d at 482–83. General acceptance is also an important factor, although it is no longer determinative. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2797, 125 L.Ed.2d at 483. In deciding whether to admit novel scientific evidence, a circuit court must consider and make findings on the record with respect to the factors described above. A circuit court is not required to afford equal weight to each factor, but instead may balance the factors as it deems appropriate. Nevertheless, whether the ruling is on admissibility arising from a motion *in limine* or on summary judgment, a circuit court must make factual findings sufficient to permit meaningful appellate review.

Because the analysis of *Daubert/Wilt* offers an evidentiary window of opportunity, not a guarantee of admissibility, the courts, not the expert witnesses or litigants, ultimately must determine when the admission of scientific evidence is appropriate and when it is not. Consequently, circuit courts retain substantial discretion in deciding whether to admit novel scientific evidence. As we have stated, the West Virginia Rules of Evidence neither impose an unflagging duty upon circuit courts to admit or exclude scientific evidence nor grant an entitlement to litigants to demand its admission or exclusion. Not surprisingly, then, an indigenous jurisprudence has sprouted in the fields where the seeds of *Daubert/Wilt* are sown. While it is not necessary to harvest this jurisprudence today, we do intend to give circuit courts more guidance from a procedural standpoint in resolving scientific evidence issues.

*Daubert/Wilt* mandates that when scientific evidence is proffered, the circuit court make a *preliminary assessment* "at the outset pursuant to Rule 104(a) of whether the reasoning or methodology underlying the testimony is scientifically valid[.]"[8] Rule 103(c) of the Rules of Evidence permits and encourages pretrial motions *in limine* as the appropriate procedure for determining the admissibility of time consuming and difficult evidentiary issues.[9] In *Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 112, 459 S.E.2d 374, 389 (1995), we indicated that the best time to review and resolve scientific issues is at the pretrial level. At that point, there is nothing to lose. A circuit court is not bound by its provisional ruling, although the parties are unless they request reconsideration. We recognize that, although scientific evidence raises validity issues that should be resolved in a separate hearing in advance of trial, Rule 705 of the Rules of Evidence

---

7. "The judge's task under *Frye* is relatively simple: to determine whether the method employed by the experts is generally accepted in the scientific community." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d at 1315.

8. Rule 104(a) provides, in part: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court[.]" As we stated in *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), Rule 104(a) requires the proponent of the

testimony to show by a preponderance that the evidence is admissible.

9. Rule 103(c) of the Rules of Evidence states: "*Hearing of Jury.*—In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury. Where practicable, these matters should be determined upon a pretrial motion in limine."

adopts a party-choice model that lets the proponent offer expert opinion without first setting out the underlying basis.[10] However, the importance of the validity problem in scientific evidence cases justifies departing from this model. What is important is that the management issues affecting expert evidence be addressed and disposed of in the most effective manner appropriate to the case. *See generally Reference Manual on Scientific Evidence* 33 (1994 Federal Judicial Center).

*Daubert/Wilt* does not advise a circuit court as to what circumstances trigger *in limine* screening pursuant to Rule 104(a) and (c) or the nature of an *in limine* hearing. To be clear, we do not suggest that every time an issue of scientific evidence appears in a case, a lengthy *in limine* hearing should be held. Actually, most scientific validity issues will be resolved under judicial notice pursuant to Rule 201.[11] Indeed, most of the cases in which expert testimony is offered involve only qualified experts disagreeing about the interpretation of data that was obtained through standard methodologies. *Daubert/Wilt* is unlikely to impact upon those cases. Therefore, circuit courts are right to admit or exclude evidence without "reinventing the wheel" every time by requiring parties to put on full proof of the validity or invalidity of scientific principles. Where judicial notice is appropriate, the circuit court should use it.

In resolving scientific issues *in limine,* circuit courts must have in mind appropriate procedures to conduct the *in limine* hearing and, more significantly, who bears what burden of proof. Because of judicial economy

and the "liberal thrust" of the rules pertaining to experts, it seems reasonable to place the initial burden of production on the opponent for purposes of this hearing. In *Paoli,* 35 F.3d at 739, the court stated:

> "[W]e generally agree ... that because under *Daubert* a judge at an *in limine* hearing must make findings of fact on the reliability of complicated scientific methodologies and this fact-finding can decide the case, it is important that each side have an opportunity to depose the other side's experts in order to develop strong critiques and defenses of their expert's methodologies.... Given the 'liberal thrust' of the federal rules, ... it is particularly important that the side trying to defend the admissibility of evidence be given an adequate chance to do so." (Citations omitted).

Second, liberal rules of discovery promote the opportunity for counsel to raise these issues prior to trial. Although our rules of discovery do not require the disclosure of the scientific methodological details that according to *Daubert/Wilt* bear on the admissibility of expert testimony, we believe it is reasonable for circuit courts under their local rule authority to require summaries and reports to disclose information bearing on *Daubert/Wilt*'s nondefinitive checklist of factors and on additional factors that should be considered in particular kinds of cases. Independent of any discovery request, circuit courts might require the parties to produce the following information any time scientific evidence is likely to be disputed under *Daubert/Wilt*: (1) to disclose the identity of all expert witnesses expected to testify at trial; (2) to provide, among other things, the ex-

---

**10.** Rule 705 of the Rules of Evidence states: "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." The purpose of the rule is to eliminate the much criticized practice of asking hypothetical questions in eliciting expert testimony, leaving it to cross-examination to bring out the relevant facts. *See* II Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 7–5(A) at 70 (3rd ed. 1994). That purpose does not support bringing the rule into summary judgment or motion *in limine* practice. Indeed, the text of the rule

supports the circuit court's authority to dispense with this procedure.

**11.** Rule 201 of the Rules of Evidence states, in relevant part:

> "(a) *Scope of Rule.*—This rule governs only judicial notice of adjudicative facts.
> "(b) *Kinds of Facts.*—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

perts' written, signed reports stating all opinions to be offered and support for such opinions, and (3) to make the experts available for deposition after the reports are submitted. *See generally, Reference Manual on Scientific Evidence* 55–113 (1994 Federal Judicial Center).[12]

■ Under *Daubert/Wilt*, the circuit court conducts an inquiry into the validity of the underlying science, looking at the soundness of the principles or theories and the reliability of the process or method as applied in the case. *The problem is not to decide whether the proffered evidence is right, but whether the science is valid enough to be reliable.* When scientific evidence is proffered, the circuit court in its "gatekeeper" role must engage in a two-part analysis in regard to the expert testimony. First, the circuit court must determine whether the expert's testimony reflects "scientific knowledge," whether the findings are derived by "scientific method," and whether the work product amounts to "good science." Second, the circuit court must ensure that the scientific testimony is "relevant to the task at hand."[13] With this framework in mind, we now turn to the plaintiffs' argument regarding the granting of summary judgment and the rejection of their expert witness's testimony.

### C.

#### Analysis

■ The plaintiffs argue the circuit court applied the wrong standard in making its decision not to consider the testimony of Officer Mader. The circuit court in a lengthy memorandum opinion explained in detail its reasoning for not considering Officer Mader's testimony. First, the circuit court questioned the credentials of the witness to offer expert testimony. The circuit court focused on the witness's lack of familiarity with "any of the rules of the Raleigh County Sheriff's department beyond those discussed in the deposition or as to any related statutes, rules or regulations of this State concerning law enforcement" and the failure of Officer Mader to have testified as an expert witness or as a witness concerning any of the issues presented in the case at bar.[14] The circuit court then concluded:

"Considering Officer Mader's experience, training and that he himself trains police officers; and further considering that no statutes, rules or regulations apply to shotguns in the trunk; and further considering that Officer Mader has no knowledge of any West Virginia statutes, rules or regulations concerning police training and work, and the fact that he has never testified as an expert witness on such issues does not serve to establish a general acceptance of any safety statutes, rules or regulations relating to shotguns or carrying and training of their use or of a general standard in law enforcement—this court concludes that Officer Mader should not be permitted to offer an opinion on the ultimate issues at trial under the Frye rule."

---

**12.** The circuit court should, for example, ask counsel for both sides to exchange and provide to the court a step-by-step outline of the expert's reasoning processes for use at the pretrial conference. After the written statements of the expert's opinions are exchanged, the judge may direct each side to identify specifically each part of the expert's opinion that is disputed and to state specifically the basis of the dispute. This practice is consistent with Rule 16(c)(4) of the West Virginia Rules of Civil Procedure that specifically states that a subject for consideration and appropriate action by the circuit court at the pretrial conference is "the avoidance of unnecessary proof and cumulative evidence." As issues are eliminated, the need for expert testimony on those issues also may be eliminated.

**13.** Relevance means determining whether the testimony logically advances a consequential as-

pect of the movant's case, *i.e.*, whether the testimony "fits" the case.

**14.** Whether a proffered expert witness has testified in court on prior occasions, while relevant, certainly is not dispositive. Once an expert witness passes the minimal threshold, further credentials affect the weight of the testimony not its admissibility. Some courts have, in fact, criticized and more carefully scrutinized experts who are nothing but professional witnesses, *i.e.*, those who spend more time in the courtroom than working in their alleged field of expertise, particularly those who acquire their information solely for the purpose of testifying. *See Daubert*, 43 F.3d at 1317–18 ("[i]f the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles' ").

■ Next, although the circuit court recognized the issue before it was not one "dealing with scientific knowledge, but more likely into technical or even specialized knowledge as to Officer Gentry's wounding[,]" nevertheless, the circuit court held that Officer Mader's testimony was inadmissible under *Daubert/Wilt*:

"There is no indication that any opinion based upon the indicated information was derived from any scientific, technical or particularly specialized methodology or that its underlying hypothous [*sic*] has been empirically tested.

\* \* \* \* \* \*

"It is this judge's experience as a combat infantry man that individuals in the face of hostile fire and facing wounding or death sometimes react differently albeit that they did or did not follow or respond to their prior training.[15]

\* \* \* \* \* \*

"In the opinion of this court the proposed testimony of Officer Mader as an alleged expert appears to be no more than his subjective belief or his unsupported speculations. Therefore under Rules 702 and 703 of Evidence this court has come of the opinion that he should not be permitted to testify on the ultimate issues [in] this case under the rationale of Daubert[/Wilt]."

Rule 702 has three major requirements: (1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact.[16] Our reviewing task, however, is made easy by the circuit court's application of the *Daubert/Wilt* standard. We need only address two specific questions: (1) Was the expert qualified? (2) If so, was the expert testimony "scientifically" based?

■ We believe the circuit court erred in its rejection of the proffered testimony. First, we find that Officer Mader's testimony easily qualifies as expert testimony under Rule 702.[17] Both the circuit court's findings and the defendants' argument that the witness had no special expertise in the subject matter of his testimony ignores the witness's extensive practical experience. The first requirement of Rule 702—that the proposed witness be an expert—has been liberally construed by this Court. Rule 702 permits a circuit court to qualify an expert by virtue of education or experience or by

---

**15.** We trust the circuit court did not mean to suggest that its experiences in combat are a substitute for evidence. The rule in West Virginia has been that facts within a judge's personal knowledge may not be considered unless the same facts are formally introduced. *See Boggs v. Settle,* 150 W.Va. 330, 338, 145 S.E.2d 446, 451 (1965) ("a trial judge is not permitted to base a finding upon facts which are merely matters of his [or her] personal knowledge as distinguished from proof of such facts"). Indeed, it would be ironic for a judge to base a judicial finding on the judge's personal experience while in the military, but at the same time to exclude opinions of Officer Mader that are based upon the more relevant experience as a police officer.

**16.** Not only in scientific evidence cases but in all cases of expert testimony, Rule 104(a) requires a circuit court to make a preliminary determination "concerning the qualification of a person to be a witness, [and] ... the admissibility of evidence." Thus, we believe that when a circuit court is faced with a proffer of expert testimony, there must be a preliminary determination as to all of the elements of Rule 702. These preliminary determinations are intended to ensure the reliability of the expert testimony as well as its relevance.

**17.** Determinations of whether a witness is sufficiently qualified to testify as an expert on a given subject and whether such expert testimony would be helpful to the trier of fact are committed to the sound discretion of the trial court. A trial court's ruling in this sphere should be upheld " 'unless manifestly erroneous[.]' " *Rozas v. Rozas,* 176 W.Va. 235, 240, 342 S.E.2d 201, 206 (1986). (Citation omitted). *See also* Syl. pt. 12, *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990); Syl. pt. 3, *State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990), *habeas corpus on other grounds granted sub nom. Dietz v. Legursky,* 188 W.Va. 526, 425 S.E.2d 202 (1992). On the other hand, we held that when a "expert witness is qualified by knowledge, skill, experience, training, or education as an expert and that the individual's specialized knowledge will assist the trier of fact, *it is an abuse of the trial court's discretion to refuse to qualify that individual as an expert."* *Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 146, 405 S.E.2d 642, 646 (1991) (per curiam). (Emphasis added).

some combination of these attributes.[18] As discussed below, we have stated clearly that a broad range of knowledge, skills, and training qualify an expert as such, and rejected any notion of imposing overly rigorous requirements of expertise. Officer Mader's background and practical experience qualify as "specialized knowledge" gained through "experience, training, or education" under Rule 702, and, unless otherwise inadmissible under Rules 702, 703, or 403, most of his testimony should have been received and considered for purposes of the summary judgment motion. After all, Officer Mader has been a police officer since 1973 and a deputy chief since 1991. He not only has attended many training sessions, but he also has taught them.[19] The obvious purpose for eliciting the opinion of Officer Mader is to help prove "deliberate intent." Over the course of his testimony, Officer Mader set forth his opinion as to why the training, instruction, and supervision given in this case was not consistent with "nationally accepted standards." He specifically opined that Officer Gentry was not adequately trained once the decision was made to place the shotgun in the trunk of the police cruiser. Officer Mader's overall opinion is that the Sheriff's conduct did not comport with commonly accepted and well known safety standards within law enforcement agencies.

■ Our cases indicate that in determining who is an expert, a trial court should conduct a two-step inquiry. First, a circuit judge must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, the circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify. There must be a match. *See generally, Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 405 S.E.2d 642 (1991).

■ What must be remembered, however, is that there is no "best expert" rule. Because of the "liberal thrust" of the rules pertaining to experts, circuit courts should err on the side of admissibility. *See* II Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7–2(A) at 24 ("[t]his standard is very generous and follows the general framework of the federal rules which favors the admissibility of all relevant evidence"). In *Cargill,* 185 W.Va. at 146–47, 405 S.E.2d at 646–47, we stated:

"West Virginia Rule of Evidence 702 enunciates the standard by which the qualification of an individual as an expert witness will be determined. It cannot encompass every nuance of a specific factual matter or a particular individual sought to be qualified. It simply requires that the witness must, through knowledge, skill, experience, training, or education, possess scientific, technical, or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue. It cannot be interpreted to require ... that the experience, education, or training of the individual be in complete congruence with the nature of the issue sought to be proven."

Our message is consistent with that of the United States Supreme Court: "Convention-

---

**18.** Neither a degree nor a title is essential, and a person with knowledge or skill borne of practical experience may qualify as an expert, although the circuit court may exclude testimony if the experience is too far removed from the subject of the proposed testimony. Other jurisdictions are in agreement with the liberal thrust of our opinions. *See Hammond v. International Harvester Co.,* 691 F.2d 646, 653 (3d Cir.1982) (permitting engineer with sales experience in automotive and agricultural equipment, who also taught high school automobile repair, to testify in products liability action involving tractors). Under Rule 702, a witness who is not a veterinarian or who holds no advance degrees could testify as to cattle's injuries if he has "significant practical experience with feed related health problems in dairy cattle." *Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.,* 790 F.2d 694, 700 (8th Cir.1986).

**19.** Where an expert was permitted to testify at trial regarding the significance of road markings, the Fourth Circuit held the lower court did not commit error by allowing the testimony. The court noted that the expert "had completed a course in accident reconstruction at Northwestern University, had consulted in numerous cases for various law enforcement agencies ..., and had served as an accident investigation instructor at West Virginia Police Academy." *Mosser v. Fruehauf Corp.,* 940 F.2d 77, 82 (4th Cir.1991).

al devices," like vigorous cross-examination, careful instructions on the burden of proof, and rebuttal evidence, may be more appropriate instead of the "wholesale exclusion" of expert testimony under Rule 702. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2798, 125 L.Ed.2d at 484. Professor Charles McCormick's often quoted statement is still relevant within the context of Rule 702: "While the court may rule that a certain subject of inquiry requires that a member of a given profession, such as a doctor, an engineer, or a chemist, be called, usually a specialist in a particular branch within the profession will not be required." Charles McCormick, *Evidence* ¶ 14 at 29 (1954).

■ The second part of the expert qualification criteria is assuring that the expert has expertise in the particular field in which he testifies. Here too, a circuit court has reasonable discretion. In discussing how much of a specialist should the expert be, a circuit court must always remember that the governing principle is whether the proffered testimony can assist the trier of fact. Necessarily the "helpfulness" standard calls for decisions that are very much *ad hoc,* for the question is always whether a particular expert can help resolve the particular issue at hand.

As discussed above, there were disputed issues at trial: (1) whether the Sheriff acted with "deliberate intent" in causing the injuries of Officer Gentry, and (2) if so, whether the injuries to Officer Gentry resulted from the deliberate and intentional conduct of the Sheriff. The obvious starting point for demonstrating "deliberate intent" is to prove that recognized safety standards for instances such as these were not followed. Both the existence of "deliberate intent" and safety standards are issues for the trier of fact to determine under careful instructions from the trial court.[20]

In this case, that means the jury was entitled to know what were the safety standards and what facts were known to the sheriff at the time of the shooting. At the very least, the jury's role includes settling disputes as to predicate facts. Certainly, it cannot be argued that Officer Mader's testimony would not have assisted the jury in this regard. As we suggested in *Ventura v. Winegardner,* 178 W.Va. 82, 86, 357 S.E.2d 764, 768 (1987): "Despite his lack of specific knowledge of ... [the West Virginia laws regarding law enforcement], it is obvious from his education and background that he would have more than a passing knowledge of the subject." Officer Mader's testimony involved his views concerning the reasonableness of the Sheriff's conduct in light of the accepted safety standards. To this end, his testimony was a fact-based opinion, not a statement of mere legal conclusion. It is no different when a medical doctor gives an opinion about the standard of care and the reasonableness of another practitioner's treatment.

■ Second, the basis for the circuit court's summary judgment order was an analysis of the plaintiffs' proffered expert testimony under the criteria set forth in *Daubert/Wilt.* The circuit court's reliance on *Daubert/Wilt* is misplaced. *Daubert/Wilt* has limited application in determining the admissibility of expert testimony. It sought to clarify the standard for evaluating "scientific knowledge" for purposes of admission under Rule 702. To be specific, *Daubert/Wilt* provides a method for assessing a proffer of expert scientific testimony, which instructed the trial court to consider the factors we have addressed earlier. The proffered testimony *sub judice* does not present the kind of "junk science" problem that *Daubert/Wilt* meant to address.[21] In other words, the question of admissibility under *Daubert/Wilt* only arises if it is first estab-

---

**20.** Of course, ultimately a court establishes the particular standard of care under a given set of facts, the jury then determine whether a defendant's conduct falls short of this standard. Expert testimony may be useful to assist the jury in making this determination, especially where the subject matter is outside the knowledge and experience of lay people.

**21.** *See also Lappe v. American Honda Motor Co., Inc.,* 857 F.Supp. 222, 228 (N.D.N.Y.1994) (suggesting that the Supreme Court intended that *Daubert* have a "narrow focus" permitting the admission of " 'novel scientific evidence' " under Rule 702).

lished that the testimony deals with "scientific knowledge." " '[S]cientific' implies a grounding in the methods and procedures of science ... [while] 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481. "In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481. It is the circuit court's responsibility initially to determine whether the expert's proposed testimony amounts to "scientific knowledge" and, in doing so, "to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d at 1316.

 The expert here relies, not upon any "scientific knowledge" or "methodology," but upon a range of factors including his experiences and understanding of police work. The question is not one for analysis under peer review, rate of error and publication and general acceptance but whether, based upon the witness's experience, his opinion will assist the trier of fact.[22] The rejected expert testimony sought to describe police practice, customs, and safety standards and to explain the approach which reasonably prudent and cautious police departments and supervisors would have taken under these circumstances. Disputes as to the strength of an expert's credentials, mere differences in the methodology, or lack of textual authority for the opinion go to weight and not to the admissibility of their testimony. *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2798, 125 L.Ed.2d at 484 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *accord Cargill v. Balloon Works, Inc., supra.*

Of course, we do not mean to suggest that in areas of nonscientific evidence an expert is not constrained by other requirements in Rule 702. As the Fourth Circuit said in *Newman v. Hy–Way Heat Systems, Inc.*, 789 F.2d 269, 270 (4th Cir.1986), "nothing in the Rules appears to have been intended to permit experts to speculate in fashions unsupported by, and in this case indeed in contradiction of, the uncontroverted evidence." On the other hand, because an expert seeks to be a pioneer in an area of law enforcement should not be determinative of the admissibility of his testimony. Even the modern validity standard envisioned by *Daubert/Wilt* does not let courts exclude scientific evidence on the basis of a simple test: *Daubert* firmly rejected the notion that scientific evidence may be excluded simply because it represents a new approach that has not yet been subject to the discipline of professional scrutiny through publication and peer review. It could very well be that this testimony is on the frontier of law enforcement policy in the sense that no clear answer has been found as to what, if any, instructions should be given when there is a change in procedure as existed in this case. Thus, this case could very well present a novel, yet well grounded, conclusion that should be resolved by the trier of fact.

To some extent, *United States v. Onumonu*, 967 F.2d 782 (2nd Cir.1992), is on point. There, a defendant charged with smuggling cocaine claimed he believed the condom he swallowed contained diamonds, not heroin. 967 F.2d at 784. He sought to introduce the expert testimony of a gemologist who would have testified about the feasibility and eco-

---

**22.** Several federal courts have considered the *Daubert* test to be too stringent to employ in considering whether to admit expert testimony in nonscientific evidence cases. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir.1994) (*Daubert* clarified standard for evaluating scientific knowledge only, and therefore, does not exclude affidavits of geotechnical and underground-construction experts who were retained to summarize and interpret voluminous, technical data); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2nd Cir.1993) (accountant's affidavit summarizing his review of payroll records not inadmissible under *Daubert* because "that case specifically dealt with the admissibility of scientific evidence"); *United States v. Starzecpyzel*, 880 F.Supp. 1027, 1040–41 (S.D.N.Y.1995) (*Daubert* factors of testability, known rate of error, peer review and publication, and general acceptance not applicable to determination of admissibility of testimony by forensic document examiner; "*Daubert* does not impose any new standard, other than what is found in the text of the Federal Rules of Evidence, for the admissibility of the testimony of nonscientific experts such as harbor pilots or real estate appraisers.").

nomic motivation for smuggling diamonds by swallowing condoms containing them. The trial court excluded the testimony, however, finding it was neither relevant nor helpful to the jury to determine a fact in issue. 967 F.2d at 786–88. The appellate court reversed suggesting that "the average New York juror knows little about smuggling diamonds" and "[the] profitability of smuggling diamonds in the alimentary canal." 967 F.2d at 788. The court concluded that the failure to admit the expert testimony was an abuse of discretion depriving the defendant "of a fair opportunity to present his case to the jury." 967 F.2d at 789.

■ This case is similar and the exclusion of the entire testimony of Officer Mader deprived the plaintiffs of a fair opportunity to present their theory of the case even on a motion for summary judgment. In determining whether the testimony will assist the trier of fact, a circuit court is required to make a common sense inquiry into "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in dispute." Mason Ladd, *Expert Testimony,* 5 Vand.L.Rev. 414, 418 (1952). It is almost to the level of judicial notice that the average West Virginia juror would have little knowledge about any matters pertinent to this case.[23]

■ In excluding Officer Mader's testimony, the circuit court ignored the fact that the same consideration that informed the court's legal decision under Rule 702 may also influence the factfinder's determination as to what weight such evidence, once admit-

ted, should receive. The axiom is well recognized: the reliability of evidence goes "more to its weight than to the admissibility of the evidence." *See, e.g., United States v. Jakobetz,* 955 F.2d 786, 800 (2d Cir.1992) ("DNA profiling evidence should be excluded only when the [opponent] cannot show [a] threshold level of reliability in its data ... [T]he court in exercising its discretion should be mindful that this issue should go more to weight than to the admissibility of the evidence."), *cert. denied,* 506 U.S. 834, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). Because Officer Mader's testimony called into question the policy of the. Raleigh County Sheriff's Department, the circuit court at least should have considered this information in determining whether there existed a genuine issue of material fact.

Finally, the circuit court referred to Rule 703 as an independent basis for the exclusion of Officer Mader's testimony.[24] One function of Rule 703, which is not disputed, is to expand the common law basis for an expert's opinion by authorizing experts to base their opinions on reliable inadmissible data. The Supreme Court's comment in *Daubert*—that expert's opinions are to be admitted only if the test in Rule 703's second sentence is satisfied—seems to also acknowledge Rule 703's role as an independent source for excluding expert testimony. This approach is consistent with prior West Virginia practice which construed Rule 703 as imposing conditions on admissibility, rather than as limited to expanding the case of expert testimony and possibly the scope of expert testimony on direct. *See Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994).

**23.** We are not at all persuaded by the circuit court's concern that the witness was unfamiliar with the specifics of West Virginia law and how that law may relate to the facts of this case. The failure of an expert to be able to explain all aspects of a case or a controlling principle in a satisfactory manner is relevant only to the witness's credibility. "Should ... [a] witness later fail to adequately [explain], define, or describe the relevant standard of care, opposing counsel is free to explore that weakness in the testimony." *Friendship Heights Assoc. v. Vlastimil Koubek,* 785 F.2d 1154, 1163 (4th Cir.1986); *see also, Dobson v. Eastern Associated Coal Corp.,* 188

W.Va. 17, 22, 422 S.E.2d 494, 499 (1992) (suggests that "[t]he fact that a proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification ... [; s]uch lack of familiarity" affects credibility, not qualification to testify).

**24.** The circuit court stated: "It does not appear that the facts upon which Officer Mader's opinion might be based would be of a type reasonably relied upon by **experts** in the particular field involved in forming opinions or inferences up the subject." (Emphasis in original).

Our concern with the circuit court's reliance on Rule 703 is that the circuit court did not identify the data or its source that implicated Rule 703. The scope of Rule 703 is limited because Rule 703 applies only when *inadmissible* evidence is relied upon. In other words, the plain meaning of Rule 703 is that the "reasonably relied upon" language in the second sentence is ground for exclusion only when an expert's opinion is based on otherwise inadmissible evidence. If the expert's opinion is based upon admissible evidence, Rule 703 does not apply:

> "If the facts or data are admissible, Rule 703 does not authorize exclusion of the expert opinion. If they are admissible, the inquiry ends, and nothing in Rule 703 authorizes exclusion of the expert's testimony. If they are not admissible, the ... [circuit] court must determine whether the reliability inquiry is satisfied. If satisfied, Rule 703 does not authorize exclusion. If it is not, the ... [circuit] court should exclude the testimony. No other reading is consistent with the plain language, history, and purpose of Rule 703." *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1118 (5th Cir.1991), (en banc) (Clark, Chief Judge, concurring), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992).

Our review of the record indicates that the fact-based testimony of Officer Mader's opinion would be based upon testimony admissible at trial.[25] This does not mean, however, that "untrustworthy" data may not be excluded. There are two separate ways to exclude untrustworthy data: (a) under the "not helpful" test of Rule 702, and (b) under the balancing test in Rule 403.[26] We caution, however, against applying the reliability or trustworthy requirements too strictly.[27] These requirements must not be used as a tool by which the courts exclude all questionably reliable or trustworthy evidence. The ultimate touchstone of admissibility is helpfulness to the trier of fact.

## III.

## CONCLUSION

We express no view as to whether a motion for summary judgment should be granted. We merely hold that in light of the liberal standard of admissibility of Rule 702 such a motion cannot be granted on the grounds articulated by the circuit court in its December 5, 1994, memorandum order. Similarly, we place no limitations on the discretion of the circuit court to decide anew the admissibility of Officer Mader's testimony and, particularly, whether it is admissible under Rule 403. If the circuit court chooses to readdress the admissibility question, the circuit court should be guided by the principles we discuss above. Finally, in the event that the circuit court decides the expert testimony is admissible for summary judgment purposes, the circuit court must still address the separate inquiry as to whether the expert evidence is sufficient to create a genuine

---

25. Similarly, we believe it was error for the circuit court to conclude that the opinions of Officer Mader were inadmissible under Rule 703 because there was insufficient evidence on the record to support a finding that evidence upon which he relied is not of the type reasonably relied upon by experts in the field.

26. To the extent that the circuit court's memorandum opinion can be read to base its opinion alternatively on insufficiency rather than inadmissibility of the evidence, we find the circuit court improperly evaluated the credibility of the witness and the weight of his testimony. These determinations must be left to the factfinders and are, therefore, inappropriate for consideration at the summary judgment stage of the proceedings.

27. Rule 403 in the context of Article VII exclusion raises complex issues implicating the relationship between judge and jury. The Fourth

Circuit placed this issue in proper perspective when it held that a trial court may not use Rule 403 to exclude testimony that clearly meets the prerequisites of Rule 702. *See United States v. Sellers*, 566 F.2d 884 (4th Cir.1977). On the other hand, had the circuit court excluded the evidence under Rule 403's prejudicial or lack of probative value *standard* and assigned grounds such as wholly speculative, insubstantial, immaterial and riveted with fallacies, it may have been, if adequately explained, on solid grounds. Given the lack of an independent mechanism for showing or knowing whether a predetermined course of action is critical or at least relevant to avoid injuries where a shotgun *is kept in the* trunk of a police cruiser, a circuit court may nevertheless believe that the methodology of any expert is not reliable enough to make factual or investigative conclusions in legal proceedings.

issue of *material* fact. Accordingly, the summary judgment order of the circuit court is reversed and the case is remanded for further action consistent with this opinion.

Reversed and remanded with directions.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.