No. 14-0968, *State of West Virginia v. Richard Wakefield.*

Justice Ketchum dissenting:

I dissent from the majority's opinion and believe that Petitioner should be granted a new trial. The majority incorrectly affirmed the trial court's admission of expert testimony based on junk science. I also write to emphasize that West Virginia Code § 61-8B-11 (our rape-shield statute) did not bar the defense from questioning a state's witness about what transpired between him and P.L. moments before the alleged sexual assault.

### A. *Many retained experts are like eggs and the local shoeshine boy*

"Retained expert witnesses are like eggs. You can buy them by the dozen – they are just more expensive." *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 582, 694 S.E.2d 815, 915 (2010) (Ketchum J., dissenting). Ms. Porrata, one of the State's expert witnesses, testified that P.L. likely ingested GHB on the night of her alleged sexual assault. However, Ms. Porrata did not meet the minimum qualifications to be an expert witness, and her testimony was not reliable. Still, the jury was allowed to hear her testimony based on junk science. The majority erred by affirming the circuit court's abandonment of its role as gatekeeper.

Ms. Porrata was not qualified to testify as an expert on whether P.L. ingested GHB. She has not been trained in the field of forensic toxicology. Rather, she is a former policewoman from Los Angeles who has a degree in police administration

and public safety. She has published no peer-reviewed articles on the sole topic to which she testified: identifying whether a victim of sexual assault ingested GHB. Rather, all of her peer-reviewed publications pertain to GHB related deaths, such as fatal car wrecks involving GHB. While I applaud Ms. Porrata for her work in assisting victims of sexual assault involving predatory drugs (including, but not limited to GHB), that alone does not qualify her as an expert witness.

Still, the majority claims that the circuit court had discretion to admit her as an expert. Under this logic, "the local shoeshine boy who played with an erector set as a child can opine on quantum physics because it is the jury which evaluates the tendered expert's qualifications." *Perrine*, 225 W.Va. at 583, 694 S.E.2d at 916 (Ketchum J., dissenting).

Furthermore, Ms. Porrata's testimony was not reliable. In assessing the reliability of Ms. Porrata's testimony, the circuit court was required to consider several factors, including: "(c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community." Syl. Pt. 2, in part, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993). As one court has noted, this includes considering "the relationship of the technique to methods *which have been established to be reliable*." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 n. 8. (3rd Cir.1994) (emphasis added).

Even Dr. Porrata indicated that her testimony was outside the scope of what is established and accepted within the scientific community. When asked during cross-

examination whether she has a degree in a scientific field, she responded "I don't think [that] would tell me absolutely anything about what we are talking about now." Further, she testified that "if you call a hundred treatment centers right now, 99 percent never heard of [GHB] being a drug of addiction." Assuming these statements to be true, the scientific community has not had opportunity to scrutinize Ms. Porrata's theories, determine their potential rate of error, or accept or decline them.

Another reason her testimony was not reliable is because it was based on mere "subjective belief [and] unsupported speculation." *See* Syl. Pt. 6, *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995). Ms. Porrata did not examine P.L. Instead, she based her opinion that P.L was given a predatory drug on the fact that P.L. was intoxicated, suffered memory loss, lacked mobility, and vomited after a long night of drinking. These are the typical symptoms of a person drunk after a long evening of drinking alcohol. Yet, she leapt to her subjective conclusion that P.L was administered a predatory drug through an unscientific and speculative process of elimination to narrow down the cause of P.L.'s symptoms to GHB. Ms. Porrata did not eliminate objectively alcoholic drunkenness as the cause of P.L.'s symptoms, but she still testified that she was sure of her opinion to a reasonable degree of scientific certainty.

In this case, there was "simply too great an analytical gap between the data and the opinion proffered," and therefore, the circuit court should not have admitted Ms. Porrata as an expert witness. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Instead, the circuit court allowed the jury to hear expert testimony based on junk science.

3

"When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law . . . it cannot support a jury's verdict." LOUIS J. PALMER, JR., ROBIN JEAN DAVIS & FRANKLIN D. CLECKLEY, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS § 702.02[1] at 29 (citing *Zf Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012)).

## B. *West Virginia Rape Shield Law*

The majority correctly states that Petitioner was allowed to elicit testimony about what happened between Mr. Carper and P.L. when they were left alone in a truck moments before P.L.'s alleged sexual assault. I write separately to emphasize that our rape shield law does not bar Petitioner's line of questioning.

The State's objection to Petitioner's line of questioning based on our rape shield law was frivolous, and the circuit court was correct to overrule it. West Virginia Rule of Evidence 412, which supersedes West Virginia Code § 61-8B-11, states: "The Court may admit the following evidence in a criminal case: (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." While the current version of Rule 412 was made effective after P.L.'s alleged sexual assault, the comment to the rule provides that it did not create new law, but rather, it clarified already existing law. The comment describes the rule's purpose as to "diminish some of the confusion engendered by the original rule[.]." W.VA. R. OF EVID. 412 cmt. (2014).

4

Likewise, we have long recognized an exception to the rape shield law where the sought evidence is "(1) specifically related to the act or acts for which the defendant is charged; and (2) necessary to prevent manifest injustice." Syl. Pt. 3, in part, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999). Thus, our rape shield law did not bar evidence of a victim's sex with a third person that is "substantive exculpatory evidence of [the defendant's] innocence." *Guthrie*, 205 W.Va. at 334 n.8, 518 S.E.2d 83, 91. Petitioner sought to establish that he was not the source of P.L.'s vaginal tearing and bruising on the night of the alleged sexual assault. Thus, the information sought by Petitioner was specifically related to the acts for which he was charged and was necessary to prevent manifest injustice.

Therefore, the majority should have granted Petitioner a new trial on the ground of the circuit court's admission of Ms. Porrata as an expert witness. Based on the foregoing, I dissent.