# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re L.N.-1, L.N.-2, and L.N.-3**

**No. 19-0998** (Nicholas County 19-JA-89, 19-JA-90, and 19-JA-91)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.N., by counsel Denise N. Pettijohn, appeals the Circuit Court of Nicholas County's October 8, 2019, order adjudicating him as an abusing parent in regard to L.N.-1, L.N.-2, and L.N.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Amber R. Hinkle, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent in regard to L.N.-1, specifically, and all the children generally.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition against the parents that alleged facts related to an incident in which L.N.-1 suffered a spiral fracture of his right femur. According to the petition, this injury occurred approximately one month after the parents regained custody of the children following prior allegations of suspicious injuries to L.N.-1,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, they will be referred to as L.N.-1, L.N., 2, and L.N.-3, respectively, throughout this memorandum decision.

1

including red marks around his jawline, red or purple marks on his back, and abrasions and a laceration on his forehead. As to L.N.-1's spiral fracture, the petition alleged that the child's mother had taken him for a medical evaluation that revealed that the child had a broken femur. After being transported from Raleigh General Hospital to a hospital in Morgantown, West Virginia, medical personnel contacted the DHHR to express concern that the child's injury was non-accidental because it did not match the mother's "changing explanations for the same." According to the petition, the mother claimed that the injury occurred at her sister's home when the child fell from a bench.

At the preliminary hearing, the DHHR presented testimony from two witnesses who confirmed that they saw the child fall with his leg extended behind him. However, a DHHR worker testified that medical personnel did not believe that the child's injury could be caused by a fall in the manner and from a height as described by witnesses. The DHHR employee further testified that L.N.-1's medical records from Raleigh General Hospital indicated that the mother stated that the child's injury occurred when the child "sat down on top of his leg." Additionally, the employee indicated that the medical records lacked reference to bruising or other signs of injury and that medical personnel believed the injuries to be non-accidental. All witnesses agreed that petitioner was not present at the time of the alleged fall that was described by the mother and other witnesses. Finding that the children were in imminent danger in the parents' care and "that the danger . . . applies equally to both parents," the circuit court ordered the children to remain in the DHHR's legal and physical custody.

In September of 2019, the circuit court held an adjudicatory hearing, during which Dr. Collin John, a pediatric expert, testified to a reasonable degree of medical certainty that the child's injury did not occur in the manner the mother described. According to Dr. John, a spiral fracture like the one L.N.-1 suffered is "typically a result of significant force, usually in a . . . twisting type of motion" necessary to produce that specific injury. Given that the child had no other medical issues, such as a Vitamin D deficiency, that would have caused the injury, Dr. John testified that non-accidental trauma could not be ruled out as a cause. Based upon the evidence, the circuit court found that the mother's "explanation is not consistent with the injury" and that, in the absence of direct evidence of abuse, "[n]on-accidental trauma [could] not be ruled out." Further, the circuit court found that the witnesses to the child's alleged fall lacked credibility because the events as they described them were "very unlikely to have caused the injury." Conversely, the circuit court found that Dr. John's testimony was "credible and reliable." Based on the evidence, the circuit court found that the child's injury "was a non-accidental trauma" that had "not [been] explained in any credible way by the mother or father." Accordingly, the circuit court found that the children were abused children and that petitioner was an abusing parent.[2] It is from the adjudicatory order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]As petitioner concedes in his brief on appeal, these findings were made on the record during the adjudicatory hearing, although they are not reflected in the circuit court's adjudicatory order on appeal.

2

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). We further expounded on this standard of review as follows:

The above standard of review requires deference by this Court to the findings of a circuit court in a civil abuse and neglect proceeding. The critical nature of unreviewable intangibles justify the deferential approach we accord findings by a circuit court. As we said in *Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996), "the standard of review for judging a sufficiency of evidence claim is not appellant friendly." *See Gentry v. Mangum*, 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995) ("Only rarely and in extraordinary circumstances will we, from the vista of a cold appellate record, reverse a circuit court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.").

*State ex rel. Diva P. v. Kaufman*, 200 W. Va. 555, 562, 490 S.E.2d 642, 649 (1997). With these parameters in mind, it is clear that petitioner's challenge to the sufficiency of the evidence upon which to base his adjudication requires us to afford the circuit court's findings substantial deference and that petitioner carries an incredibly high burden. Upon our review, we find that he has failed to satisfy the same such that relief is warranted.

On appeal, both of petitioner's assignments of error relate to his adjudication as an abusing parent. As such, we note the following:

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

3

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted). Finally, pursuant to West Virginia Code § 49-1-201, an abused child is one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Upon our review of the record, we find that the DHHR satisfied the applicable burden and established that the children were abused children.

On appeal, petitioner attempts to confuse a straightforward issue by asserting logically flawed arguments regarding his complicity and relying on procedural technicalities in an attempt to convince this Court that it cannot meaningfully review the circuit court's adjudicatory ruling. These arguments, however, ignore the compelling evidence that the DHHR presented and the circuit court's clear and unambiguous rulings. What is abundantly clear from the record is that Dr. John testified unequivocally that L.N.-1's injury was inconsistent with the explanation provided and that non-accidental trauma could not be ruled out. Based on this testimony, and especially in light of the lack of a plausible explanation from the parents, the circuit court found that L.N.-1's injury was the result of non-accidental trauma. Given that the evidence established that the child's injury did not occur in the manner expressed to medical professionals, it was incumbent upon petitioner to provide some rational explanation for the injury and, in the absence of such explanation, the circuit court was free to use Dr. John's testimony as the basis to find that abuse occurred. Indeed, this Court has held that

> "[b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability." Syl. Pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996).

Syl. Pt. 2, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

Petitioner takes issue with the circuit court's finding that he did not testify in order to refute the DHHR's evidence by asking "what evidence would [he] refute?" According to petitioner, he was not present at the time of the injury and, thus, could offer no testimony to refute the DHHR's evidence. We note, however, that this argument is fundamentally flawed. The circuit court found that the explanation for the child's injury lacked credibility because it was inconsistent with the medical records and the medical expert's testimony. Because the evidence shows that L.N.-1's broken femur was not sustained during the alleged fall, then it is of no

consequence whether petitioner was present at that time.[3] What is consequential, however, is that petitioner and the mother were the child's caregivers and neither was able to provide a valid explanation for the child's injury that the circuit court found was caused by non-accidental trauma. Contrary to petitioner's assertions on appeal, this constitutes probative evidence of his abuse. Accordingly, any argument that petitioner advances on appeal that is predicated upon his absence at the time the child allegedly fell entitles him to no relief. Further, we find that the circuit court appropriately considered petitioner's silence as affirmative evidence of his culpability. While petitioner relies on rhetoric to question what possible testimony he could have offered to respond to these allegations, it is clear that he was required to offer some testimony if he wished to avoid the appropriate presumption of his culpability.

In support of his assertion that adjudication was erroneous, petitioner raises several other arguments, none of which entitle him to relief. According to petitioner, the DHHR offered no evidence that petitioner abused the children and failed to present evidence of any other cause of injury to L.N.-1 other than the alleged fall. This argument, however, asks this Court to impose upon the DHHR a burden that is not required for purposes of adjudication in cases such as these. Essentially, petitioner's argument asks this Court to require the DHHR to present an eyewitness to petitioner's physical abuse of the child, when it is clear that such evidence is unlikely to exist. As this Court has explained, such evidence is unnecessary for purposes of abuse and neglect proceedings:

> Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). This holding explicitly permits the termination of parental rights upon evidence like that introduced below. Here, the evidence showed that petitioner and the mother were L.N.-1's caregivers, the child suffered non-accidental trauma at some point in their care, and neither parent took any steps to acknowledge

---

[3]In support of his argument that the evidence shows that he was not present at the time of the injury, petitioner asserts that a witness that the circuit court did not find lacked credibility, a DHHR employee, testified that petitioner was not present at the time of L.N.-1's injury. According to petitioner, this is sufficient to show that he was not present at the time of the injury and could in no way be responsible for the same. Simply put, this argument is one of semantics that does not entitle petitioner to relief. Regardless of whether this witness used the word "injury" in her testimony, the fact remains that the full context of her testimony on this issue was related to petitioner's absence during the child's alleged fall. As set forth above, the circuit court found that the explanation that the child was injured during the alleged fall was inconsistent with the medical testimony and, therefore, whether petitioner was present at the time the child allegedly fell does not absolve him of responsibility for the child's injury.

the abuse or identify the perpetrator thereof. Petitioner argues that the circuit court did not make any specific findings of fact or conclusions of law regarding how his conduct was abusive, thereby depriving this Court of meaningful appellate review. We note, however, that while the circuit court's adjudicatory order is succinct, it nonetheless explicitly lays out findings sufficient for our review.

Petitioner further attempts to limit the circuit court's ability to find that he was an abusing parent by citing only the definition of "abused child" found in West Virginia Code § 49-1-201, while totally disregarding this Court's prior holdings. Specifically, petitioner challenges the knowledge component of that definition by once again arguing that he could not have knowledge of the abuse because he was not present when it was perpetrated. However, we have previously held that

> [t]he term "knowingly" as used in West Virginia Code § [49-1-201] *does not require that a parent actually be present at the time the abuse occurs*, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred.

*Doris S.*, 197 W. Va. at 492, 475 S.E.2d at 868, syl. pt. 7 (emphasis added). Again, while we find no merit to petitioner's assertion that he could not be found to be an abusing parent because he was not present at the time he claims the injury occurred, as more fully set forth above, he ignores the fact that the applicable statute does not require his presence. Instead, it requires that he be presented with sufficient facts upon which he should have recognized that abuse occurred, which he was. Despite these facts, petitioner failed to make such a recognition. Petitioner further argues that the circuit court erred in "treating the parents as one unit," but we note that this is in keeping with the holdings of *Doris S.* and *Jeffrey R.L.* discussed above.

We additionally note that, although the holding of *Jeffrey R.L.* is couched in terms of a termination of parental rights, this Court has cited it approvingly in circumstances related to the DHHR's burden of proof at adjudication. In the case of *In re Danielle T.*, 195 W. Va. 530, 534, 466 S.E.2d 189, 193 (1995), this Court examined an adjudicatory ruling based upon "testimony [that] focused upon . . . burn injuries to the inside of Danielle's arms and to her malnutrition," in addition to several other injuries. The issue of the parents' adjudication in that case revolved around the parents' claim that the child was burned by a defective vaporizer near her bed, while a medical expert testified that "even if Danielle had been inquisitive toward the vaporizer, she could not have sustained burns located upon the inside of both arms, especially, as here, in the absence of corresponding burns upon the chest." *Id*. The parents further asserted that the child was "a fussy eater" and refused food and fluids for a brief period because of an illness, while medical testimony revealed that "Danielle's malnutrition had occurred over a period of months" and "that Danielle did not have an eating disorder." *Id*. In analyzing the issues in that case, the Court cited the above-quoted holding from *Jeffrey R.L.* approvingly in regard to the DHHR's satisfaction of its burden of establishing abuse of the child:

> Moreover, in *In re Jeffrey R.L.*, this Court indicated that there was no reasonable likelihood that the conditions of abuse could be substantially corrected because the perpetrator had not been identified, and the parents had taken no action to

6

identify the abuser. That is also the case here. In this case, the [parents] sought to explain Danielle's burn and malnutrition conditions with testimony inconsistent with the medical evidence. . . . Accordingly, this Court is of the opinion that the record contains clear and convincing evidence of extensive physical abuse.

*Danielle T.*, 195 W. Va. at 535, 466 S.E.2d at 194.[4] Just like in the case of *Danielle T.*, the mother in this case provided an explanation for L.N.-1's injury that was not consistent with medical evidence and petitioner stood silent in the face of this evidence, thereby permitting the circuit court to accept his silence as affirmative evidence of his culpability.

In further support of his arguments on appeal, petitioner argues that Dr. John's testimony contained inconsistencies, thereby rendering it incredible.[5] Specifically, petitioner asserts that Dr. John failed to explain how an injury could be non-accidental in the absence of other markings or bruising or how the child could appear normal to the fact witnesses when he was suffering from a spiral fracture. We note, however, that the circuit court considered all of Dr. John's testimony, including those portions petitioner claims are inconsistent with the witness's ultimate conclusion, and found it to be credible and reliable. Petitioner also argues that the two fact witnesses the DHHR presented provided testimony regarding the child's alleged fall that is inconsistent with Dr. John's testimony. However, petitioner fails to recognize that the circuit court explicitly found that these fact witnesses lacked credibility. These are the types of determinations that this Court will not disturb on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

---

[4]While the ultimate issue in *Danielle T.* concerned the granting of an improvement period, it is clear that this decision was predicated upon the circuit court's finding in that case that "the [parents] did not physically abuse Danielle and did not intentionally neglect her." *Id*. at 532, 466 S.E.2d at 191. In resolving the issue of whether the granting of an improvement period was appropriate, this Court began its analysis with a recitation of the applicable statutory definitions of "abused child" and "neglected child." *Id*. Having relied on *Jeffrey R.L.* in reversing the circuit court's failure to find that the parents committed physical abuse of that child, it is clear that the holding from *Jeffrey R.L.* quoted above is relevant to the Court's affirmation in this matter, despite the specific language used in *Jeffrey R.L.* concerning termination of parental rights.

[5]Petitioner asserts that the circuit court should have found Dr. John's testimony lacked credibility because he is an expert in pediatrics, not orthopedics, and because he failed to consult with the orthopedist who treated the child prior to testifying. We find, however, that because petitioner did not object to Dr. John's qualification as an expert below, he has waived this issue on appeal. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

According to petitioner, the circuit court "gave no findings of fact as to why it found one witness more credible than the others, and therefore left this Court without a means to determine if an error has been committed." We disagree, and find that the circuit court's order is sufficiently specific, albeit succinct, in its findings regarding the credibility of the various witnesses below. In short, this is simply an attempt by petitioner to ask this Court to go behind credibility determinations that were not in his favor, which we decline to do.

Petitioner's remaining arguments in support of his assertion that adjudication was inappropriate are predicated upon the circuit court's alleged failure to comply with certain statutes and rules. Specifically, petitioner asserts that the circuit court failed to make appropriate findings of fact and conclusions of law concerning whether the children were abused or neglected. However, this issue is easily resolved, considering that Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)." (Emphasis added). Petitioner is correct that we have long held that "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *In re Walter G.*, 231 W. Va. 108, 114, 743 S.E.2d 919, 925 (2013). However, petitioner's reliance on this principle completely ignores the plain language of Rule 27. While we acknowledge that West Virginia Code § 49-4-601(i) requires the additional finding that the parent is abusing or neglecting, we find that the circuit court's failure to explicitly set forth this finding in the order on appeal does not require vacation.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). On appeal, petitioner admits that the circuit court found, on the record, that the children were abused and that he was an abusing parent. Further, given that the circuit court's order specifically found that L.N.-1 suffered non-accidental trauma and petitioner failed to identify the perpetrator of such abuse, it is clear that the order contains a sufficient basis for a finding that petitioner is an abusing parent, despite the fact that the finding is not explicitly made. As such, we cannot find that vacation of this order is warranted, given that this does not constitute a substantial disregard or frustration of the rules and statutes governing abuse and neglect proceedings.

Further as to petitioner's assertion that the circuit court erred in making insufficient findings as to how L.N.-2 and L.N.-3 were abused or neglected children, the resolution of this issue is quite simple. This Court has long held that

[w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va. Code [§ 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). The record shows that all the children lived in the same home. As such, there is no error in the circuit court's finding, on the record, that all of the children were abused children. Ultimately, we find that the DHHR satisfied its burden of proof and we find no error upon our review.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison