STATE OF WEST VIRGINIA

*v.*

OKERY BAILEY

(No. 12622)

Submitted May 10, 1967.          Decided July 11, 1967.

*Thornhill & Kennedy, David T. Kennedy,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Leo Catsonis, Morton I. Taber,* Assistant Attorneys General, for defendant in error.

CAPLAN, JUDGE:

At the January Term, 1965, of the Criminal Court of Raleigh County, the Grand Jury of said county returned an indictment against the defendant, Okery Bailey, charging her with the crime of murder. Subsequently, in June, 1965, the defendant was discharged after a trial at which the jury was unable to agree on a verdict. A second trial of this defendant on the aforesaid indictment was held in October, 1965, at which the jury returned a verdict of guilty of voluntary manslaughter.

On November 8, 1965, at the same term of court, the prosecuting attorney filed an information charging the defendant with the conviction of a prior felony under the name of Okur Harris. Upon being asked by the court if she was the same person as that charged in the information, the defendant stood mute. Thereupon, the court empaneled a jury to hear and determine that question. After the evidence was adduced in rela-

tion thereto the jury returned a verdict of "guilty as charged in the within information." The court then sentenced the defendant to confinement in the state penitentiary for a term of one to five years on the voluntary manslaughter conviction and in accordance with the provisions of Code, 1931, 61-11-18, as amended, imposed an additional five years by reason of the jury finding on the information. The motion of the defendant to set aside the verdict and to grant a new trial having been overruled and appeal to the Circuit Court having been denied, this appeal was prosecuted.

The evidence in the record of this case consists only of that adduced from witnesses who were called by the State. The defendant did not testify nor did she present any evidence on her behalf. The principal witnesses were Jimmy Hall, the husband of the deceased Geraldine Hall, and Marie Williams, a sister-in-law of the deceased.

The evidence reveals that approximately one year after his marriage to Geraldine, Jimmy Hall began a "courtship" with the defendant, Okery Bailey. This affair, during which Hall and the defendant engaged in illicit relations "many times", had continued over a period of six or seven years. Mr. Hall acknowledged that his wife had known of his "courtship" with the defendant for the past year or year and a half but had never seen them together.

On the evening of September 22, 1964, Jimmy Hall left his home in Lillybrook, in Raleigh County, for the purpose of visiting a friend in the community of Besoco. While driving his automobile up Pickshin Road, which is on the way to Besoco, he saw the defendant walking toward him. Although he had made no plans to meet her that evening, Jimmy Hall stopped his vehicle on the right side of the road and engaged in conversation with the defendant. Mr. Hall did not get out of his car and the defendant stood in the road on the driver's side. He testified that after they had been

talking for about five to ten minutes, during which time the car motor was running and the lights were on, the defendant turned and started walking away. She walked to the front of the car, turned right and disappeared into the high weeds and bushes which adjoined the road. Jimmy Hall then looked back and saw his wife coming up the road. Geraldine approached on the right side of the car and proceeded to the edge of the road in the general area where the defendant had disappeared into the underbrush. He said that she was shouting but he could not understand her. While Geraldine was standing approximately five to seven feet off the road, on the right-hand side of the automobile, her shouting was interrupted by two shots fired in "quick succession". Jimmy Hall testified that "she fell right there, — spun around and fell."

Marie Williams, who was accompanying Geraldine at the time she observed her husband with the defendant, came upon the scene at that time. She testified that Geraldine had been looking for her husband and when she saw him she began to run up the hill, toward her husband's car, shouting as she was running. She said Geraldine did not have a pistol in her hand. She further testified that although it was dark she could see by reason of a street light; that when the shots were fired Jimmy was in the car; and, that when she arrived where Geraldine was lying, Jimmy was "over his wife" exclaiming "She didn't have to do it." The record reveals that this incident occurred in close proximity to the street light and that by reason thereof and the lights on Hall's car the area was well illuminated. The house next to the unoccupied house in front of which the Hall car was parked was the home of a Mr. Buster who was sitting on his front porch when the shooting occurred.

According to the testimony of Mr. Hall, when he approached his wife after the shooting, he opened her purse and took a gun out of it which he admitted belonged to him. He and Marie Williams then placed

Geraldine in the automobile for the purpose of taking her to a hospital. On the way to the hospital, however, he stopped along Lillybrook Mountain and hid a gallon of moonshine whiskey, which was in his car, and also hid the gun which he said he had taken from his wife's purse. Geraldine was dead on arrival at the hospital. Later that night, during interrogation by the State Police, Jimmy Hall took one of the officers to the place where he had hidden the moonshine and the gun. While the gun was introduced into evidence, no attempt was made to determine its caliber or if it had been fired recently.

Dr. Thomas Wilson, who examined Geraldine Hall at the hospital, testified that the cause of death was a bullet wound in the head. He stated that the bullet entered the head "right and above the right eye." When he extracted the bullet, which he testified was large, out of shape and mashed on the one side, he gave it to Sergeant Lilly of the State Police. Upon this state of facts, Okery Bailey was apprehended, indicted for murder and convicted of voluntary manslaughter.

Seeking reversal of the judgment below the defendant relies on the following assignments of error: (1) The verdict is contrary to the law and the evidence and is not supported by the evidence; (2) the refusal of the trial court to direct a verdict for the defendant at the conclusion of the state's evidence; (3) the refusal of the trial court to declare a mistrial by reason of an attack on the defendant's character even though the defendant had not put her character in issue; (4) instructing the jury that defendant could be found guilty of second-degree murder; and (5) erroneous verdict on conviction under the information filed by the prosecuting attorney. Principally, the defendant asserts that the circumstantial evidence in this case was not adequate to connect her with the shooting which killed the decedent and that her guilt, therefore, was not proved beyond a reasonable doubt.

It is contended on behalf of the State that an appellate court must look to that evidence which tends to support the jury verdict and permit it to stand unless it is plainly wrong or the evidence relied upon by the jury was manifestly inadequate. It takes the position, of course, that the evidence in this case, though circumstantial, is clearly adequate to support the verdict. Although the appellant assigns several grounds of error on this appeal the principal ground relied on, and which is decisive of this case, is that the evidence adduced at the trial is not sufficient to establish guilt beyond a reasonable doubt and, therefore, cannot support the verdict of the jury. It is elementary in our system of criminal jurisprudence that an accused stands innocent until proved guilty. It follows, therefore, and it is equally well recognized, that the state must bear the burden of proving beyond a reasonable doubt the guilt of an accused. If this burden is not effectively borne, a verdict finding a defendant guilty must fall. Consequently, in order to determine the adequacy of proof of guilt in this case, it is necessary to carefully consider the evidence, much of which is related in the above stated factual situation.

Basically the evidence reveals that Jimmy Hall, husband of the deceased, had an unscheduled meeting with the defendant with whom, over a period of years, he had been engaged in an illicit affair; that Hall's wife had been cognizant of this affair for more than a year and on the evening in question was searching for him; that upon observing her husband and the defendant together she ran up the hill toward them; that the defendant then took leave of Hall and went into the underbrush to the right of his car, after which she was not seen again that evening; that the deceased approached on the right-hand side of the automobile and proceeded to the edge of the road in the general area in which the defendant had disappeared; that shortly thereafter two shots, fired in rapid succession, were heard at which time the deceased was facing the under-

brush; and that a bullet struck the deceased over her right eye causing her death.

There was no direct testimony as to who fired the gun which propelled the death dealing bullet. The defendant was unobserved by any witness after she entered the bushes, although Hall testified that after the fatal shooting he heard ''her going down the hill through the bushes.'' Marie Williams who arrived on the scene immediately after the shooting also testified that she did not see the defendant again after her exit from the road. We must look to the evidence submitted to the jury to determine if it establishes the defendant's agency in the commission of this crime. The testimony of two witnesses places the defendant at the scene of the crime. There was evidence that the defendant was heard running down the hill away from this area immediately after the shooting occurred. No claim was made nor was there any showing that anyone other than the defendant was in this underbrush at that time. That the deceased, when felled by the fatal bullet, was facing the bushes into which the defendant had fled was established by the evidence and remained unrefuted. During direct examination, when Jimmy Hall was being interrogated about his wife's position when she was killed, the following questions and answers were asked and given:

''Q. Well, when she was there in front of your car talking to 'the pitch black' or whoever she was talking to, and hollering, what happened?

A. She was saying something about her coming back, I don't know what, and hollering and all at once there was some shots.''

On cross-examination the following testimony appears:

''Q. And your wife was going right after her.

A. No, sir.

Q. Well, she was going in the same direction, wasn't she?

A. She went out there and stopped.

Q. And she stopped, facing toward where Okery went into the woods?

A. Yes, sir.''

Although there was no positive evidence that Okery Bailey had a gun in her possession on the evening in question, the testimony of Jimmy Hall wherein he said that she carried a gun remains unchallenged. He stated elsewhere in the record that he ''knew she [Okery] had a gun,'' although that did not relate to the incident resulting in this case. It is not essential that there be positive evidence that the defendant had a gun in her possession in such a case. If there is evidence from which the jury may reasonably infer possession of a gun, the absence of direct testimony of such possession will not be fatal to its finding that the defendant fired the fatal shot. 30 Am. Jur. 2d, Evidence, Section 1124.

The undisputed evidence reveals that the defendant and the husband of the deceased were, over a long period of time, engaged in an illicit affair and that such relationship was known to the deceased. This evidence was properly admitted to prove the motive of the accused. In criminal cases, wherever motive is important and material, a wider range of evidence is permitted to prove motive than is allowed in support of other issues. It has been stated that anything that might have influenced the accused to commit the act may be shown. ''Evidence of all the relations and feelings existing between the deceased and the accused may be shown for this purpose. Illicit sexual *** relations may be shown.'' 26 Am. Jur., Homicide, Section 323. See *State v. Legg,* 59 W. Va. 315, 53 S. E. 545, 3 L. R. A. (N. S.) 1152.

In *State v. Beale,* 104 W. Va. 617, 141 S. E. 7, the

Court said: "If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means and conduct it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted." The evidence in the instant case is wholly circumstantial and must, therefore, be viewed with caution and weighed with scrupulous circumspection. Having so considered the evidence adduced at the trial of this case, we find that as to time, place, motive, means and conduct, such evidence concurs in pointing to this defendant as the perpetrator of the crime. There is a reasonable connection between the facts proved and the fact at issue.

It is now well recognized and firmly settled that proof of guilt may be established by circumstantial evidence as well as direct evidence. *State v. Maley,* 151 W. Va. ____, 153 S. E. 2d 827; *State v. Stevenson,* 147 W. Va. 211, 127 S. E. 2d 638, cert. den. 372 U. S. 938, 9 L. ed. 768, 83 S. Ct. 886; *State v. Winkler,* 142 W. Va. 266, 95 S. E. 2d 57; *State v. Beale,* 104 W. Va. 617, 141 S. E. 7; *State v. Lucas,* 103 W. Va. 743, 138 S. E. 393; *State v. Sheppard,* 49 W. Va. 582, 39 S. E. 676. See 29 Am. Jur. 2d, Evidence, Section 266. This has been termed a rule of necessity, it being obvious that if guilt could not be proved by such evidence it would be impossible, in a great many instances, to successfully prosecute perpetrators of crime. After all, crimes generally are not committed on Main Street, at high noon and in clear view of all passersby. It is seldom that the actual commission of violations of the law is viewed by witnesses. Therefore, it is essential to effective law enforcement that circumstantial evidence, under strict scrutiny of the court, be admissible in criminal cases.

The introduction of such evidence, however, does not relieve the state of its duty of proving guilt beyond a reasonable doubt. Evidence, to warrant a conviction, must fulfill that requirement, whether it be direct or circumstantial. The term "reasonable doubt" is dif-

ficult to define. Certainly it does not mean that a finding of guilt must exclude every vestige of doubt. Such finding could be predicated only on direct and positive testimony. Suffice to say that the reasonable doubt requirement is met if the evidence is such that the finding of guilt is based on moral certainty. 30 Am. Jur. 2d, Evidence, Section 1125. See also *State v. Beale,* 104 W. Va. 617, 141 S. E. 7 and *State v. Lucas,* 103 W. Va. 743, 138 S. E. 393.

The defendant contends that in order for the verdict of guilty to stand, the evidence upon which such guilt is based must exclude every reasonable explanation except that of guilt. She asserts that the evidence does not satisfy that requirement in this case. This assertion is based upon her reasoning that the evidence presents a more reasonable hypothesis that Jimmy Hall shot his wife than that the defendant fired the fatal bullet. It is well recognized that when two inferences, equally plausible, may be drawn from the evidence, the law does not permit the jury to adopt the one more unfavorable to the accused. *State v. Maley,* 151 W. Va. ____, 153 S. E. 2d 827; *State v. Kelly,* 105 W. Va. 124, 141 S. E. 633. The proposition of law upon which the defendant relies is sound, but, in view of the verdict of the jury, it is not applicable. The jury had before it for its consideration all of the evidence pertaining to Hall's role in this incident. The necessary inference of the testimony of two witnesses, Jimmy Hall and Marie Williams, caused the jury to believe that Hall did not commit the crime. The only facts proved to the satisfaction of the jury preclude any inference of Hall's guilt. The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses. *State v. Etchell,* 147 W. Va. 338, 127 S. E. 2d 609; *State v. Kessinger,* 144 W. Va. 209, 107 S. E. 2d 367; *State v. Curotz,* 142 W. Va. 45, 93 S. E. 2d 519; *State v. Spradley,* 140 W. Va. 314, 84 S. E. 2d 156; *State v. Harlow,* 137

W. Va. 251, 71 S. E. 2d 330; *State ex rel Pierce v. Williams,* 95 W. Va. 218, 120 S. E. 594.

It is argued by the defendant that the jury had only the testimony of the two principal witnesses as the basis for eliminating the hypothesis that Hall fired the fatal shot; that such testimony should not be believed; and that the jury was therefore bound to consider both hypotheses and adopt the one more favorable to the defendant. As noted above, the evidence referred to by the defendant has been considered by the jury. It has made its finding thereon. Whether the witnesses are to be believed or disbelieved is a matter for jury consideration. An appellate court can not invade the province of the jury concerning the weight of the evidence, where such evidence is not incredible; nor can it judge the credibility of the witnesses. The weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination, and whether such evidence excludes, to a moral certainty, every reasonable hypothesis, other than that of guilt, is a question for the jury. *State v. Ohler,* 178 Neb. 596, 134 N. W. 2d 265; *State v. Donckers,* 200 Wash. 45, 93 P 2d 355; 30 Am. Jur. 2d, Evidence, Section 1125.

If the testimony of the witnesses is taken as true, and that is a matter for the jury to decide, this Court can be concerned only with the question of whether that evidence is competent to sustain a conviction. We are of the opinion that the evidence connecting the defendant with the commission of this crime was sufficient to warrant the submission of the case to the jury. This prevents reversal on the ground of the verdict being against the weight of the evidence.

In the instant case the death of Geraldine Hall by a bullet wound has been established as an unquestioned fact. Competent evidence places the defendant at the scene of the crime at the time of its commission. Competent evidence, weighed by the jury, formed a

basis for motive and means on the part of the defendant to commit this crime. All of these factors concur in pointing to the defendant as the one who fired the fatal shot. In the face of this evidence, though circumstantial, we cannot say that the verdict of the jury is wrong.

We have carefully considered the other errors assigned by the defendant on this appeal and find them to be without merit.

For the reasons stated herein, the judgment of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*