# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-1038** (Wood County 19-M-AP-2)

**Joshua Ray Lell,**
**Defendant Below, Petitioner**

**FILED**

**February 2, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joshua Ray Lell, by counsel Andrew J. Hilber, appeals the Circuit Court of Wood County's October 15, 2019, order affirming his conviction for second-degree sexual abuse. The State of West Virginia, by counsel Mary Beth Niday, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal and erred in convicting him based upon the insufficiency of the evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, petitioner, who worked at a home for mentally challenged and handicapped individuals, was arrested for second-degree sexual abuse after the victim, a resident, reported that in February of 2018, petitioner groped his genitals, slapped his buttocks, and watched a pornographic film while masturbating in front of him. Following a bench trial in Wood County Magistrate Court, petitioner was found guilty of second-degree sexual abuse and sentenced to ninety days of incarceration, which was suspended for one year of unsupervised probation. Further, petitioner was ordered to register as a sex offender for ten years and was forbidden from working with incapacitated persons.

1

Petitioner appealed his conviction to the Wood County Circuit Court, which held a bench trial in September of 2019. The victim, N.A.,[1] testified that he was a client and resident of the home where petitioner had worked. Relevant to this appeal, N.A. stated that he was his own guardian but needed help with everyday activities like cooking, cleaning, and transportation. He also said that he had a part-time job as a janitor and had a girlfriend. N.A. testified that in February of 2018, petitioner assisted him with a shower and grabbed his penis and that petitioner watched a pornographic film while masturbating in his presence. N.A. stated that he alerted staff about these incidents. However, N.A. also admitted to calling the police several times with allegations against the staff at his home in an effort to get them in trouble. On cross-examination, N.A. stated that he was friends with petitioner and was previously jealous of petitioner giving more attention to another client in the home.

Next, a staff member of the home testified that N.A., age thirty-four, requires twenty-four-hour protective oversight, help with daily chores and activities, and guidance to accomplish tasks on his own. She explained that N.A. gets times and dates confused.[2] The staff member testified that she witnessed petitioner and N.A. roughhousing on the day of the incident in question in 2018 and that N.A. made a comment about petitioner "bouncing" on his penis. She also stated that she found the DVD containing the pornographic movie that N.A. testified to and that she gave it to management at the facility. Finally, she stated that N.A. called the police on staff on a couple of prior occasions when he was angry, but that no charges ever came from the calls.

The State then called the investigating police officer who testified that he interviewed petitioner in March of 2018 after having him sign a waiver of *Miranda*[3] rights. The officer testified that petitioner denied touching N.A.'s penis but changed his story several times, first stating that N.A. tried to kiss him then stating that N.A. tried to embrace him during the incident in the shower. Notably, the officer stated that petitioner admitted to having sexual fantasies about N.A. and that if petitioner had not stopped working at the home, "something may or may not have happened" with N.A.

At the conclusion of the State's case-in-chief, petitioner moved for judgment of acquittal arguing that the State failed to prove all elements of second-degree sexual abuse beyond a reasonable doubt. Namely, petitioner argued that the State failed to prove that N.A. was mentally defective, citing the lack of medical records or expert testimony to establish that N.A. suffered

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]As an example of N.A.'s inability to accurately remember dates and discern the passage of time, N.A.'s testimony shows that he thought that his shower with petitioner lasted several hours. The staff member testified that N.A.'s showers were usually around fifteen minutes.

[3]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

from a mental disease or defect. Petitioner argued that N.A., as his own guardian, was able to consent to sexual contact. The State responded that N.A. lived in a facility specifically designed for round-the-clock care of mentally challenged adults and that the court, having heard N.A.'s testimony, was apprised of N.A.'s obvious delays and mental shortcomings. Regarding N.A.'s ability to appraise his own conduct, the State argued that during N.A.'s testimony, he often acted childlike when explaining the sexual abuse, such as using hand movements to explain masturbation. Further, the State noted that N.A. required constant supervision and prompting to meet his basic needs throughout the day. The circuit court agreed with the State and denied petitioner's motion.

Petitioner then presented the testimony of a program director of the home who has known N.A. as a client and resident of the home for the past twenty years. She explained the N.A. was his own guardian, but he had an appointed conservator to handle all financial matters as well as a "health care surrogate" through the West Virginia Department of Health and Human Resources ("DHHR") who made all medical decisions on his behalf. As his own guardian, N.A. was able to "give input" into his day-to-day activities. She testified that N.A. likes to call the police to see their "uniforms" and get their attention, but that no arrests have occurred. The director stated that N.A.'s intelligence quotient indicated a low degree of functioning, that he was mentally challenged, had treatment plans to address his difficulties, and had an accepted diagnosis of "mental retardation." She also explained that N.A. cannot drive a vehicle and does not have a driver's license.

Finally, petitioner testified that he worked directly with several client-residents, including N.A., and that although he helped N.A. shower (due to an injured toe), he did not touch N.A.'s penis. Petitioner further denied any instance of touching N.A.'s penis but admitted to horse-playing with N.A. on the day in question in 2018 by sitting on N.A. Petitioner explained that the residents were allowed to have girlfriends and were allotted an hour of personal time for sexual contact, during which the staff would not disturb them. On cross-examination, petitioner stated that N.A. tried to kiss him, yet could not give clear answers as to whether he thought N.A. had romantic feelings for him or had tried other sexual advances towards him. When asked whether he had ever sexually fantasized about N.A., petitioner replied, "define fantasy" then stated "no." He further denied masturbating in front of N.A. or watching pornography with N.A.

After hearing closing arguments, the circuit court found petitioner guilty of second-degree sexual abuse, finding that N.A.'s testimony and childlike responses, as well as the testimony of others, proved that N.A. met the meaning of someone with a mental defect. The circuit court ruled that the previously imposed sentence remain in effect by order entered on October 15, 2019. It is from this order petitioner now appeals.

This Court reviews orders by a circuit court after a bench trial as follows:

> "'In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de*

*novo* review.' Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996)." Syl. Pt. 1, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 1, *State v. Knotts*, 233 W. Va. 665, 760 S.E.2d 479 (2014).

On appeal, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal. According to West Virginia Code § 61-8B-8, "[a] person is guilty of sexual abuse in the second degree when such person subjects another person to sexual contact who is mentally defective or mentally incapacitated." Further, West Virginia Code § 61-8B-1(3) defines "[m]entally defective" to mean "that a person suffers from a mental disease or defect which renders that person incapable of appraising the nature of his or her conduct." On appeal, petitioner challenges the sufficiency of the State's evidence that N.A. suffered from a mental defect or disease. Petitioner cites N.A.'s part-time work as a janitor and having a girlfriend as proof that N.A. had the ability to participate in daily life decisions. According to petitioner, the circuit court "ignored the fact" that N.A. acted as his own guardian and inappropriately relied "primarily upon the fact that the alleged victim lived in a group home and suffers from mental retardation."[4] Finally, petitioner argues that there were inconsistences in N.A.'s testimony regarding the dates and times of the alleged sexual abuse and that the evidence was insufficient to convict petitioner of second-degree sexual abuse.[5] Upon review, we find petitioner is entitled to no relief.

"The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted). Moreover,

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further,

---

[4]In petitioner's reply brief, he references the circuit court's remarks at trial that N.A.'s group home was akin to "being institutionalized" and that this finding supported elements required of crimes concerning incarcerated individuals. However, the circuit court was obviously referring to persons institutionalized in facilities for mental illness or disease and not incarcerated individuals.

[5]For clarity and brevity, petitioner's three separate assignments of error have been combined into one.

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part. *See also State v. Boyd*, 238 W. Va. 420, 431, 796 S.E.2d 207, 218 (2017) ("[I]t is now well recognized and firmly settled that proof of guilt may be established by circumstantial evidence . . . ." (quoting *State v. Bailey*, 151 W. Va. 796, 804, 155 S.E.2d 850, 855 (1967))).

In viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of second-degree sexual abuse proved beyond a reasonable doubt. Petitioner points to N.A.'s janitorial job and romantic relationship with a woman as proof that he suffers from no defect, but the record belies this contention. Contrary to petitioner's assertions, the record shows that although N.A. was his own guardian who could give input into his day-to-day decisions, he was not, in fact, autonomous, as the staff directed most of his daily activities and he could only leave the home under supervision. Also, petitioner concedes that N.A. had an appointed conservator who made all financial decisions for him as well as a health care surrogate through the DHHR who made all medical decisions on N.A.'s behalf. Indeed, the overwhelming majority of testimony gathered from staff at N.A.'s group home as well as that of N.A. established that N.A. has a low I.Q., lower cognitive functioning, and mental challenges to the point where he is unable to make most of his own decisions. Thus, a rational trier of fact could find that N.A. suffered from a mental defect that impacted his ability to appraise his own conduct.

Lastly, petitioner makes much of the West Virginia Guardianship and Conservatorship Act, arguing that because N.A. was appointed as his own guardian,[6] he must not suffer from an intellectual disability, mental incompetency, or other handicap. However, petitioner disregards the fact that N.A. was appointed a conservator,[7] which required a finding that he is a protected person.

---

[6]West Virginia Code § 44A-1-4(5) defines "guardian" as "a person appointed by the court who is responsible for the personal affairs of a protected person, and, where the context plainly indicates, the term 'guardian' means or includes a 'limited guardian' or a 'temporary guardian.'"

[7]Likewise, "conservator" is defined as "a person appointed by the court who is responsible for managing the estate and financial affairs of a protected person, and, where the context plainly indicates, the term 'conservator' means or includes a 'limited conservator' or a 'temporary conservator.'" W. Va. Code § 44A-1-4(1).

"Protected person" means an adult individual, eighteen years of age or older, who has been found by a court, because of mental impairment, to be unable to receive and evaluate information effectively or to respond to people, events, and environments to such an extent that the individual lacks the capacity: (A) To meet the essential requirements for his or her health, care, safety, habilitation, or therapeutic needs without the assistance or protection of a guardian; or (B) to manage property or financial affairs or to provide for his or her support or for the support of legal dependents without the assistance or protection of a conservator. A finding that the individual displays poor judgment, alone, is not sufficient evidence that the individual is a protected person within the meaning of this subsection. "Protected person" also means a person whom a court has determined is a missing person.

W. Va. Code § 44A-1-4(13). Petitioner disregards this finding and also ignores N.A.'s appointment of a healthcare surrogate by the DHHR who handled his decisions regarding his healthcare, treatments, etc. Further, petitioner cites no authority to support his assertion that a mentally disabled person who is his own guardian fails to meet the definition of "mentally defective" as set out in West Virginia Code § 61-8B-1(3). Indeed, taken as a whole, N.A.'s lack of autonomy and inability to make day-to-day decisions is apparent as he lived in a group home with constant care, supervision, and guidance, and had a health care surrogate with the DHHR to make all medical decisions. Petitioner cannot reconcile his position with the overwhelming evidence that N.A. suffered from a mental defect.

As for the alleged inconsistences in N.A.'s statements regarding the dates and times of the alleged abuse, petitioner's own testimony belies this assertion. Petitioner alleges that N.A. lied about the sexual encounter in the shower in 2018 because his shift did not begin until 3:00 p.m. and that another worker would have had N.A. shower earlier that morning. However, the testimony of the staff member established that N.A. only completed a hygiene routine that morning, which did not specify whether he took a shower then or later in the day. Regardless of the exact date and time, petitioner admitted to being in the bathroom with N.A. and helping him shower due to N.A.'s broken toe. These are the same facts as testified to by N.A. Further, petitioner admitted to roughhousing or horse playing with N.A. on the day in question and briefly sitting on top of N.A. Although petitioner denied any sexual contact with N.A.'s penis, the circuit court found N.A.'s testimony more credible, especially in light of the fact that the officer testified that petitioner admitted to having sexual fantasies about N.A. during his interview. Finally, petitioner attacks N.A.'s credibility due to his past behavior of contacting the police with complaints against staff members of the group home. Ultimately, these are all credibility issues that the circuit court resolved in the State's favor and we decline to disturb them on appeal. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, syl. pt. 3, in part ("Credibility determinations are for a jury and not an appellate court."). Having reviewed the entirety of the evidence presented, we conclude that the State met its burden of proving that the victim suffered "from a mental disease or defect which renders that person incapable of

appraising the nature of his or her conduct" so as to satisfy the element required in West Virginia Code § 61-8B-8(a). W. Va. Code § 61-8B-1(3).

For the foregoing reasons, the circuit court's October 15, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton