# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0937** (Jefferson County CC-19-2020-F-23)

**Sherri Lynn Fritts,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Sherri Ann Fritts, by counsel James T. Kratovil, appeals the Circuit Court of Jefferson County's orders granting the State's motion in limine to admit evidence of drug activity, granting the State's request to allow expert testimony from a witness, and denying petitioner's motions for judgment of acquittal or new trial. Respondent the State of West Virginia, by counsel Patrick Morrisey and Scott E. Johnson, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted for delivery of a controlled substance resulting in the death of Angelina Costello and for failure to render aid to Ms. Costello. According to petitioner's statement to police, petitioner got into an argument with her ex-husband so petitioner contacted Ms. Costello to pick her up. Ms. Costello picked petitioner up and drove her to Ms. Costello's home, where they stayed for approximately forty-five minutes. When petitioner wanted to return home, Ms. Costello was not feeling well so Ms. Costello reportedly allowed petitioner to borrow her car. Petitioner claimed that she left Ms. Costello's home through the front door, locking it behind her. Petitioner then drove to two stores before returning to her ex-husband's home. Sometime later, petitioner left Ms. Costello's car at Harding's service station.

According to Trooper First Class Matthew Morgan, during the evening of December 9, 2018, he received a call to conduct a wellness check at Ms. Costello's home. When he arrived, he discovered that the doors were locked and there was no sign that anyone was home, as there was no car outside and no sign of distress. Also on that date, Ms. Costello's son, David Austin Pulse, had been unable to contact his mother so he drove from Kentucky to his mother's home, arriving

1

at approximately 8:00 or 9:00 a.m. the following morning. He reportedly picked a lock to enter the locked home, where he found Ms. Costello dead in her bed. Mr. Pulse's girlfriend contacted law enforcement. Although Mr. Pulse denied the presence of any drug paraphernalia or cleaning anything, Jefferson County Medical Examiner Gary Viands, who is also a paramedic/firefighter, responded to the scene and observed the body before it was transported to Charleston for an autopsy. He did not observe any track marks or fentanyl patches on Ms. Costello's body. Based on his experience, he recognized the physical symptoms of a drug overdose, including fluid draining from Ms. Costello's nose and mouth.

Petitioner was arrested related to Ms. Costello's death. The State filed a motion in limine seeking to offer evidence from the trial of Richard Brooks regarding an alleged illegal drug buy between petitioner and an individual known as "Cuz." Petitioner's counsel told the circuit court that he thought Mr. Brooks's testimony was that he did not sell drugs to petitioner and never saw anyone in his home sell drugs to petitioner. The circuit court responded that petitioner's counsel was "really addressing a slightly different issue which is factually what happened versus getting into with the witness at least some effort to buy drugs." It continued by stating that the State is "asking to do that as intrinsic evidence versus having to go through a Rule 404(b) hearing on other crimes, wrongs or acts." The circuit court found that Mr. Brooks could not testify that petitioner came for the purpose of purchasing drugs from Cuz but could lay a foundation that he was not a social acquaintance with petitioner and that he let Cuz sell drugs from his home. While the State argued that it was intrinsic evidence, petitioner's counsel argued that it was 404(b) evidence and that the prejudicial effect outweighed the probative value. The circuit court took the issue under advisement.

During the pretrial hearing, the circuit court also heard testimony related to the State's request to qualify Sergeant Steven Holz as an expert witness. Sgt. Holz was one of the investigating officers in petitioner's case; he served a search warrant on Google regarding petitioner's location data for December 8, 2018. Google responded with an Excel spreadsheet that contained various data, including a specific time and date, a latitude, a longitude, and a radius in meters of how accurate Google estimated that location to be. Sgt. Holz testified that he attended training regarding the preparation and use of the data and that when he received the raw data from Google it was difficult to interpret the location that each data entry represented. He explained that one would have to know how to map them in order to figure out where the locations were, as it would just look like numbers. According to Sgt. Holz, the location history results were sometimes inconsistent with an interview petitioner gave detailing her locations. During cross-examination, Sgt. Holz explained that the data was "not sophisticated. . . . [Y]ou get latitude, longitude. You get date and time and you get what's called a radius of basically how accurate they believe it to be based upon the way they collect the data." The State then asserted that it was

> not calling Sergeant Holz as an expert into the underlying science or data or asking him to explain that to the jury. It simply designated him as an expert pursuant to Rule 702 because he possesses specialized training to interpret the data to allow it to be more easily understood by the jury. So in this case he took the raw data points[,] which on their face don't really indicate much information[,] and he turned it into a map that is easily understood. The [S]tate's not calling him to explain the underlying science or to explain anything else other than he took the data and put

2

it into a map.

The State further explained that "[i]f the issue is whether or not Sergeant Holz is an expert, he doesn't need to be. You know, he can testify to plotting the points on a map. That's fine with the State." In addition, the State informed the court that "Sergeant Holz is taking data recovered from a search warrant and making it into a map so that it's easily understood." Petitioner's counsel argued that Sgt. Holz did not have the necessary training or experience to be able to go into "the science of this GPS collection." The circuit court determined that Sgt. Holz

> is not qualified and is not being offered as an expert in GPS. However, it seems evident to the [c]ourt in 2020 that GPS data is ubiquitous and is regularly relied upon in everything from aircraft to the military to individuals walking down a street trying to determine which direction they're headed. And so I do find that GPS data is distinct from cell tower data is reliable and of the type that are generally relied upon by experts in the field. So in my mind I'm going to allow the GPS data and now Sergeant [Holz] has laid his qualifications to explain why it is he's qualified to interpret the raw data and to take that data, convert it to a usable format such that it appears on a map and to show times and places of or course of travel and times.

The circuit court ultimately found that it was "satisfied that Sergeant Holz is an expert in the area of GPS data mapping and he will be allowed to so testify."

With regard to the testimony of Richard Brooks, the circuit court entered an August 18, 2020, order regarding the State's motion in limine. In that order, the circuit court granted the State's motion

> to admit evidence of [petitioner's] drug activity on December 8, 2018[,] of which Mr. Richard Brooks has personal knowledge, subject to the following caveats: The State, although agreeing to limit intrinsic evidence to the events of December 8, 2018, would like to adduce testimony from Richard Brooks that [petitioner], on some earlier day(s), had purchased illegal drugs from a person named 'Cuz' at Brooks's residence. Based on the State's proffer, the [c]ourt believes it understands that Brooks may not have witnessed a drug sale to [petitioner] on December 8, 2018, but, because [petitioner] had allegedly visited Brook's [sic] residence on unknown earlier dates to buy drugs, Brooks inferred that [petitioner] was again seeking drugs from Cuz on December 8th. The State also alleges that on December 8th [petitioner] ingested fentanyl in Brook's [sic] bathroom.

However, the circuit court precluded the State from making any reference during its opening statement to Mr. Brooks's mere inference that because petitioner allegedly purchased drugs at Mr. Brooks's residence on other dates, she must have purchased fentanyl there on December 8th.

During the trial, petitioner did not testify and did not call any witnesses. At the conclusion of the trial, petitioner was found guilty of delivery of a controlled substance resulting in death and failure to render aid. The jury was polled, and each juror answered in the affirmative that the verdict read by the court was his or her own true verdict. Thereafter, petitioner filed a motion for

judgment of acquittal, which was denied by the circuit court by order entered on August 31, 2020. Therein, the circuit court found that based upon the pleadings of the parties, the evidence presented during trial, and all relevant case law and statutes, when viewing the evidence in the light most favorable to the State, a rational jury could find petitioner guilty beyond a reasonable doubt. On that same date, the circuit court entered its order denying petitioner's motion for new trial, determining that the interests of justice do not require a new trial and that petitioner had not presented any new evidence arising since the end of the trial that would warrant granting petitioner a new trial. Following the completion of a presentence investigation report, as directed by the circuit court, the court sentenced petitioner to fifteen years in the penitentiary for delivery of a controlled substance resulting in death and an indeterminate sentence of one to five years in the penitentiary for failure to render aid. The circuit court ordered that the sentences run consecutively. Petitioner appeals from these orders.[1]

Initially, we note that

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we turn to petitioner's assignments of error.

At the outset, we note that petitioner failed to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

---

[1] We remind petitioner's counsel of his obligation under Rule 10(c)(4) of the West Virginia Rules of Appellate Procedure, which requires that a petitioner's brief "shall contain" the following:

> *Statement of the Case*: Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error.

Petitioner's two-sentence statement of the case contains no references to the appendix so it falls woefully short of the mandates of Rule 10(c)(4).

The vast majority of petitioner's factual assertions throughout the brief lack citation to the record. In addition, petitioner fails to set forth a chronology of facts, that she claims support her contentions, from which this Court can follow certain arguments. Therefore, this Court will address the arguments as it understands them and will disregard factual assertions and arguments that are not sufficiently set forth in petitioner's brief or clear from the record.

Petitioner first asserts that the circuit court erred by denying her motions for acquittal or, in the alternative, motion for a new trial. In support of that assertion, petitioner argues that there was insufficient evidence adduced at trial to let the case continue. The State failed to elicit the date that the decedent died. The State failed to show the manner and methodology of death. The medical examiner testified that the decedent died from a dose of oxycontin and fentanyl, for which the decedent had a prescription.

This Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Additionally, we held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3. Further, under *Guthrie*, a petitioner "must prove there is *no* evidence from which the jury could find guilt beyond a reasonable doubt." *State v. Zuccaro*, 239 W. Va. 128, 145, 799 S.E.2d 559, 576 (2017) (emphasis in original).

Upon our review of the record, we find that the State produced sufficient evidence to sustain petitioner's conviction, particularly viewing the evidence from the prosecutor's coign of vantage and accepting all reasonable inferences consistent with the verdict. Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). The State admits that its case was circumstantial

5

but asserts that "[i]t is now well recognized and firmly settled that proof of guilt may be established by circumstantial evidence as well as direct evidence." *State v. Bailey*, 151 W. Va. 796, 804, 155 S.E.2d 850, 855 (1967). As the State argues, the jury could have concluded that on December 8, 2018, petitioner obtained fentanyl from Cuz while Cuz and petitioner were at Mr. Brooks's house. The jury could have concluded that a drug overdose caused Ms. Costello's death, as the Jefferson County Medical Examiner recognized the physical symptoms of a drug overdose, which was confirmed by the toxicology screen that found fentanyl in Ms. Costello's subclavian blood was 21.3 nanograms per millimeter – seven times the lethal level. The State asserts that the jury also could have concluded that petitioner gave the fatal drugs to Ms. Costello. We agree. Based upon the record as a whole, we find that the circuit court did not err in denying petitioner's motions for judgment of acquittal and a new trial.

Next, petitioner argues that the circuit court erred in allowing Sergeant Holz to testify as an expert witness. She further contends that Sgt. Holz did not have the specific education, training, and experience in the field of cell phone technology to qualify as an expert. Without citing to the record, petitioner asserts that the State indicated early on that it intended to call Sgt. Holz as a witness to offer testimony on the issue of cell phone mapping, contending that the technology would allow an expert to review cell phone data and map the route an individual's phone took during a period of time. She admits that the State introduced evidence that Sgt. Holz had taken certain courses during his employment that allowed him to become an expert in that technology, including classes in 2013, 2014, 2015, and 2017. Petitioner asserts that while Sgt. Holz is an expert in law enforcement, he did not show that he knows anything special about cell phone tracking and collection.

As this Court previously found,

Rule 702 of the West Virginia Rules of Evidence provides in full that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." "Rule 702 reflects an attempt to liberalize the rules governing the admissibility of expert testimony." *Weisgram v. Marley Co.,* 169 F.3d 514, 523 (8th Cir.1999). What this means is that "[t]he rule 'is one of admissibility rather than exclusion.'" *In re Flood Litig. Coal River Watershed,* 222 W.Va. 574, 581, 668 S.E.2d 203, 210 (2008) (quoting *Arcoren v. United States,* 929 F.2d 1235, 1239 (8th Cir.1991)). "Disputes as to the strength of an expert's credentials, mere differences in the methodology, or lack of textual authority for the opinion go to weight and not to the admissibility of their [sic] testimony." *Gentry v. Mangum*, 195 W.Va. 512, 527, 466 S.E.2d 171, 185 (1995) (citation omitted).
The decisions of this Court have "explained that circuit courts must conduct a two-part inquiry under Rule 702 and ask: (1) is the witness [qualified as] an expert; and, if so, (2) is the expert's testimony relevant and reliable?" *San Francisco v. Wendy's Int'l, Inc.,* 221 W.Va. at 741, 656 S.E.2d at 492 (citations omitted). *See also* Robin Jean Davis, *Admitting Expert Testimony in Federal Courts and Its Impact on West Virginia Jurisprudence,* 104 W. Va. L.Rev. 485, 513 (2002) ("Trial courts are

required to assess scientific expert testimony for relevancy and reliability."). In Syllabus point 5 of *Gentry* we set out the steps that a trial court should take to determine if an expert is qualified to render an opinion under Rule 702:

> In determining who is an expert, a circuit court should conduct a two step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

195 W.Va. 512, 466 S.E.2d 171.

The general standard for determining whether an expert's scientific opinion is relevant and reliable was set out in Syllabus point 2 of *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196:

> In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can be and have been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community. . . .

> The assessment of whether scientifically-based expert testimony is "reliable," as that term is used in [*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993)], does not mean an assessment of whether the testimony is persuasive, convincing, or well-founded. Rather, assessing "reliability" is a shorthand term of art for assessing whether the testimony is to a reasonable degree based on the use of knowledge and procedures that have been arrived at using the methods of science—rather than being based on irrational and intuitive feelings, guesses, or speculation. If the former is the case, then the jury may (or *may* not, in its sole discretion) "rely upon" the testimony.

*In re Flood Litig.,* 222 W.Va. at 582 n. 5, 668 S.E.2d at 211 n. 5.

7

*Harris v. CSX Transp., Inc.*, 232 W. Va. 617, 621-22, 753 S.E.2d 275, 279-280 (2013).

In the instant matter, during the pretrial hearing, Sgt. Holz testified as to courses he attended, in addition to his experience using cellphone data records in his investigations. In ruling upon the issue, the circuit court agreed that Sgt. Holz was not "qualified and is not being offered as an expert in GPS." However, it went on to find that "GPS data [is] distinct from cell tower data is reliable and of the type that are generally relied upon by experts in the field." It, therefore, permitted Sgt. Holz, based upon his qualifications, to "explain why it is he's qualified to interpret the raw data and to take that data, convert it to a usable format such that it appears on a map and to show times and places of or course of travel and times." As this Court recognized in *Gentry*, "[t]he first requirement of Rule 702—that the proposed witness be an expert—has been liberally construed by this Court. Rule 702 permits a circuit court to qualify an expert by virtue of education or experience or by some combination of these attributes." 195 W. Va. at 524-25, 466 S.E.2d at 183-84. Here, Sgt. Holz not only took computer training courses, but he had experience using these records through the course of his career in investigations. Moreover, the validity of his plotting was corroborated by video surveillance placing petitioner at Harding's at the same time that the data points showed her there. Therefore, we find that the circuit court did not abuse its discretion in admitting Sgt. Holz's testimony at issue.

Finally, petitioner asserts that the circuit court erred in allowing the testimony of Richard Lee Brooks. Petitioner argues that the probative value of that testimony was outweighed by the prejudicial effect and the State failed to disclose it pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[2] Mr. Brooks testified that he knew petitioner on a social basis and also knew Cuz through his son, including that Cuz was a drug dealer. He also testified regarding seeing both at his house, where they exchanged something over the course of five minutes. Citing Rule 404(b), petitioner contends that the mere fact that an individual meets with one known to deal drugs is insufficient to say that each time he meets with a person it is for the purpose of buying or selling drugs.

When determining whether Rule 404(b) is implicated, a circuit court must first determine whether the offered evidence is intrinsic or extrinsic. *See State v. Harris*, 230 W. Va. 717, 721, 742 S.E.2d 133, 137 (2013). We find that Rule 404(b) is not implicated here because Mr. Brooks's testimony is intrinsic. Among other things, "[i]ntrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *Harris*, 230 at 722, 742 S.E.2d at 138. As the State represented below,

> Mr. Brooks was aware that Cuz sold heroin at his residence and in terms of – I don't think that it falls under 404(b) because it's not being used to prove the character of [petitioner] to be a drug dealer, but it is to show the opportunity for her to have purchased the drugs. And further it's not towards [petitioner's] character, but it's

---

[2] Rule 404(b) of the West Virginia Rules of Evidence permits the introduction of evidence of a defendant's other crimes, wrongs, or acts where the evidence is introduced for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

an act of somebody else which would be Cuz, so it's intrinsic to the case because it provides an important factual background. And as far as the prejudicial aspect goes [petitioner] is already on trial for a drug offense. The jury finding out that she was purchasing drugs prior isn't going to contribute to any more prejudice than she's already *afflicted*[sic] to by being changed[sic] with a drug based offense.

Further, Rule 401 of the West Virginia Rules of Evidence provides as follows: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Petitioner was on trial for delivery of drugs resulting in Ms. Costello's death. The background to petitioner obtaining the drugs the State alleges caused Ms. Costello's death is relevant because petitioner first had to obtain the drugs before delivering them. Further, the evidence was not unduly prejudicial pursuant to Rule 403.[3] The probative value of how petitioner obtained the drugs was not substantially outweighed by any unduly prejudicial effect so the circuit court did not abuse its discretion in admitting Mr. Brooks's testimony. "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr,* 192 W. Va. 165, 451 S.E.2d 731 (1994). For the reasons set forth herein, we find that the circuit court did not clearly abuse that discretion in allowing Mr. Brooks's complained of testimony.

Affirmed.

**ISSUED:** October 29, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[3] Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."